## SULLIVAN vs. THE STATE.

CRIMINAL LAW: *Unlawful Cohabitation.*
    Living or dwelling together in the same house, is an essential element of the crime of unlawful cohabitation as husband and wife.

APPEAL from *Lonoke* Circuit Court.

Hon. J. W. MARTIN, Circuit Judge.

*Hallum,* for appellant.

*Attorney General, contra.*

HARRISON, J.:

The appellant was convicted in the Lonoke Circuit Court, upon an indictment, which charged him and one Laura Durham with cohabiting together as husband and wife without being married, and fined $100.

The evidence for the State was as follows:

W. H. Frazier, testified: That he frequently staid all night with the defendant, at his father's house in the Richwoods, in Lonoke County, and on one occasion, within six months before the finding of the indictment, he slept in a large room with three beds in it, one of which was occupied by himself and another by the defendant. The defendant went to bed before he did, and when he came in, about eleven o'clock, he asked the defendant for a light. He told him there was none, and that he could find the bed. When he awoke, next morning, the defendant had left the room, and he saw Laura Durham sitting on the side of his bed, in a loose robe or gown, putting on her shoes and stockings. He did not know when she came into the room, and did not see her in the bed, but inferred and believed from the circumstances, that she slept with the defendant. Laura Durham, was the cook and house servant of defendant's father, who was, at the time, an invalid and confined to his room. She waited on the table; did not eat at it with the family. She did not act as if she was the defendant's wife, nor was she so regarded by his acquaintances.

The defendant is a white man, and she a colored woman; and they were never married.

James Hicks, testified: That in 1876 (the indictment was found at the September Term of that year), he was in the employment of the defendant's father, as a laborer on his farm, in the Richwoods, and he slept in a large room, in which were three beds, and in which room the defendant also slept. That one

night Laura Durham came there from Lonoke, and she and the defendant slept together in the same bed, and in the room in which witness slept. Laura Durham was for awhile employed by the defendant's father to cook, and she occupied a room some fifty or sixty yards from his house. While she staid in that room, the defendant slept but seldom in the room with the witness. Their demeanor towards each other, was not like that between the defendant and the other servants on the place. They acted like husband and wife. He had seen him help her on her horse, and had seen them take horse-back rides together.

Carroll Hallum, testified: That he rented land from the defendant's father in 1876, and lived on it within 300 yards of his house. He had often seen the defendant and Laura Durham, whilst he lived there and before the finding of the indictment, walking together, through the farm. Had seen him holding his umbrella over her, and had often seen them walking arm in arm. Had seen him help her on her horse, and put her foot in the stirrup. On several occasions, they had ridden together until within a short distance of Lonoke, when he would spur up his horse on ahead and ride into town by himself, to avoid the suspicion of having been riding with her; and on one occasion, though each had a horse when they went there, they returned from Lonoke on the same horse, and had seen her riding behind him on his horse about the farm.

The defendant's father drove her off the place, on account of her conduct with the defendant, and the defendant for awhile boarded her at Todd Dillaha's, who lived on his farm, and afterwards at Lonoke. Whilst she was at Todd Dillaha's, he often saw them together then; and on two occasions, early in the morning, he saw them in bed together. After the death of his father, he brought her back to his house, and kept her there.

J. E. Burk, testified : That he once saw the defendant and Laura Durham in a caboose car, attached to a freight train, going to Little Rock. They took the car at Lonoke. They did not sit on the same seat, or pay any attention to each other. The car was crowded. They returned in a day or so. He frequently visited the defendant at his father's house, in the Richwoods, whilst Laura Durham was a servant there, but never saw anything wrong or improper between them.

Jesse Miller, testified : That some time in 1876, and before the finding of the indictment, the defendant told him he would be responsible for the rent of a house in the town of Lonoke, that Laura Durham was living in, to the amount of $20, saying at the time, that he owed her so much.

And H. G. Legate testified : That he, on one time, saw the defendant at Laura Durham's house, in Lonoke. He had no coat or vest on, and seemed to have been just washing his face. It was in the day time and in the summer. He did not see her. The defendant was at that time living in the Richwoods, some ten miles from Lonoke.

Perhaps it should be stated, that Todd Dillaha testified on behalf of the defendant, that he never boarded Laura Durham at his house, and that they never slept together there.

Cohabiting is an essential element in the offense charged in the indictment. The language of the statute, upon which it is found, is : " If any man and woman shall cohabit together as husband and wife, without being married, each of them shall be deemed guilty of a misdemeanor, and shall upon the first conviction be fined," etc. Sec. 1320, Gantt's Digest.

Bouvier, in his Law Dictionary, gives this definition of the word cohabit : " To live together in the same house, claiming to be married," and the definition given in Burrill's Law Dictionary, is : " To live together as husband and wife ; to live

together at bed and board; to live together as in the same house." And, Webster, defines it thus: "*First*—To dwell with; to inhabit or reside in company, or in the same place or country. *Second*—To dwell or live together as husband and wife."

The sense in which the word is used in the statute, is evidently that of living or dwelling together in the same house. In *Crouse* v. *The State*, 16 Ark., 566, the indictment charged that the defendant "unlawfully and wickedly did bed to, and live with one Johnson Kenedy;" it was held bad because it did not allege that the parties lived together as husband and wife. In Indiana, where they have a statute which declares that "every person who shall live in open and notorious adultery or fornication, shall be fined," etc., it was held that the offense consisted in open and notorious cohabitation; and in order to make out the offense, there must be a living together. *The State* v. *Gartrell*, 14 Ind., 280; *Wright* v. *The State*, 5 Blackf., 358; and in Illinois in a case where the parties were indicted for living together in an open state of fornication, as in the cases in Indiana, the court said: " In order to constitute this crime, the parties must dwell together openly and notoriously, upon terms as if conjugal relations existed between them. In other words, they must cohabit together."

Since the case of *Crouse* v. *The State*, the legislature has so far changed the language, if not the meaning of the statute, as to substitute the word cohabit for live. Act April 12th, 1869.

We do not think it necessary, that the parties should claim to be husband and wife; if they live together in the same house, in like manner as respects bed and board as marks the intercourse between husband and wife, they, in the sense and meaning of the statute, cohabit as husband and wife. The law seeks not alone to prevent the false assumption of the marriage relation, and to prohibit the public scandal and disgrace of such

immoral connections; but also to preserve and promote the institution of marriage, upon which the best interests, and indeed the existence, of society depend. We do not, however, intend to express any opinion as to the objection raised by the defendant's counsel, that the parties, one being of the white and the other of the colored race, could not lawfully marry with each other.

The evidence fails to show, that the parties lived or cohabited together.

No such inference from the facts, testified to by the witness Hallum, that the defendant after the death of his father, took the woman back to his house and kept her there, can be drawn, as that they lived, after her return, together in the same house, and deported themselves towards each other as husband and wife, against the presumption which the law raises, in favor of the defendant's innocence. 1 Green Ev., secs. 34, 35.

The verdict of the jury is not sustained by the evidence; the judgment must therefore be reversed, and the cause remanded to the court below, that the defendant may have a new trial.