## THE STATE v. KIRKPATRICK.

1. **Criminal Law**: INDICTMENT: ALLEGATION OF TIME: EVIDENCE NOT LIMITED BY. Ordinarily, the time of the commission of the offense, as stated in the indictment, is not material; and it is competent to prove the commission of the offense to have been prior thereto, provided such time is within the statute of limitations. And where the indictment charged the commission of the offense on a day certain, and on other days subsequent thereto, the allegation as to subsequent days was unnecessary, and did not preclude the state from proving the commission of the offense at a time prior to the day certain.

2. ———: LEWD COHABITATION: FACTS NOT CONSTITUTING: EVIDENCE TO ESTABLISH. While occasional acts of sexual intercourse, secretly indulged in between a man and woman living in the same house, ostensibly as master and servant, do not alone constitute the crime of lewd cohabitation, (see *State v. Marvin*, 12 Iowa, 499,) yet such acts, and the birth of a child to the woman during the existence of such relation, may be considered by the jury, in connection with all the circumstances of the case, in determining whether or not the parties were guilty under the statute.

3. ———: ———: EVIDENCE CONSIDERED AND HELD SUFFICIENT. The evidence in this case considered, (see opinion,) and *held* sufficient to support the verdict of guilty of lewd cohabitation.

4. **Instruction**: AS TO LEGAL EFFECT OF IMPEACHING WITNESS: WHEN

NOT REQUIRED. Where there was evidence tending to impeach some of the witnesses, in the absence of a request for a special instruction as to the legal effect of such impeachment, it was sufficient for the court to say to the jury that they were the sole judges of the credibility of the witnesses, and of the weight to be given to their testimony. *State v. Brainard*, 25 Iowa, 572, distinguished.

5. **Criminal Evidence:** BAD MORAL CHARACTER OF DEFENDANT. Where the defendant in a criminal prosecution takes the witness stand in his own behalf, his bad moral character may be shown in derogation of his credibility. Code, § 3649.

*Appeal from Decatur District Court.*

TUESDAY, JUNE 3.

THE indictment, omitting the formal part, is as follows:

" The said Wm. A. Kirkpatrick, on the first day of January, in the year of our Lord one thousand eight hundred and eighty-two, in the county aforesaid, and on divers other days and times between said day and the finding of this indictment, the said defendant and one Mary J. Collins, a female, he, the said defendant, not being married to said Mary J. Collins, did then and there unlawfully, lewdly and viciously cohabit and associate together, and he, the said defendant, and said Mary J. Collins did then and there lewdly and viciously cohabit and associate together as man and wife, contrary to law."

The jury found the defendant guilty, and judgment was rendered on the verdict. The defendant appeals.

*McIntire Bros.*, for defendant.

*Smith McPherson, Attorney-general*, for the State.

SEEVERS, J.—I. The court instructed the jury that it was sufficient if they found that the defendant and Mary J. Collins, "within three years prior to the finding of the indictment, did lewdly and viciously associate and cohabit together," etc. The objection made to this instruction is that under the indictment

1. CRIMINAL law: indictment: allegation of time; evidence not limited by.

the time should have been limited to the day named in the indictment and afterwards. Ordinarily, the time the offense is committed, as stated in the indictment, is not material; but it is competent to prove the commission of the offense to have been prior thereto, provided such time is within the statute of limitations. This is conceded by counsel for the defendant, but he says that this cannot be the rule in this case, because the crime is charged to have been committed on a day certain, and on divers days afterwards, prior to finding the indictment. No authority is cited which sustains this distinction; and we do not think the point is well taken. The indictment charges that the offense was committed on a day certain, and afterwards; that is, both on said day and afterwards. If the latter allegation had not been made, the state would not have been confined to the day named, but could have introduced evidence tending to show that the crime had been committed both before and after the day stated in the indictment. The fact that an allegation is made which was unnecesary, and to sustain which evidence could be introduced if it had not been made, should not cause the rejection of such evidence. We think the instruction correct.

II. The third and fourth paragraphs of the charge are as follows:

"3. The burden of the offense is the open, lewd, lascivious conduct of the parties living together as husband and wife. It is the publicity and disgrace, the demoralizing and debasing influence, that the law is designed to prevent. If, therefore, you find from the evidence in this case that the defendant and said Collins lived together in the same house, in the relation of master and servant, and not as husband and wife, and that they only had occasional acts of sexual intercourse, and these in a secret manner, such facts alone would not be sufficient to constitute the crime charged against defendant in this case.

2. ——: lewd cohabition: facts not constituting: evidence to establish.

"4. But the crime charged may be shown by circumstances, in connection with the other evidence in the case, it

such circumstances are sufficient in connection with such other evidence to satisfy you beyond a reasonable doubt that the crime has been committed, as charged in the indictment, under these instructions; and, in determining whether said parties were or were not living together as husband and wife, it is proper for you to consider any and all acts of sexual intercourse, if any have been shown by the evidence; the fact, if you find it to be a fact, that a child was born to said Collins while she was living with defendant; and all other facts and circumstances disclosed by the evidence as surrounding the parties while living together."

The third instruction is objected to on the grounds that it is argumentative, and in the nature of a lecture on morals, and assumes the condition upon which the defendant and Mary J. Collins lived and cohabited together. In this we do not concur. The instruction as a whole is favorable to the defendant, and the legal proposition announced in terse and proper language. The objections of counsel are without merit, and this is clearly demonstrated by a simple reading of the instruction. The fourth instruction is also objected to because it "assumes that there was other evidence given in this case outside of circumstantial." From the argument of counsel we infer that he means that it was improper to call attention to the birth of a child and acts of sexual intercourse, which were established by positive evidence, because neither has any tendency to prove the relation existing between the parties. It is sufficient at present to say that we do not concur in this proposition. The instruction is further objected to because it conflicts with *The State v. Marvin*, 12 Iowa, 499. The third instruction is evidently based on that case, and is in accord therewith; and we are unable to see that there is any conflict between them.

III. It is contended that the verdict is against the evidence; and this involves the proposition whether it is contrary to the third instruction. There was evidence tending to show that, about six years prior to the trial, the defendant and his mother were

3. ——: ——: evidence considered and held sufficient.

living together on a farm, and that Mary J. Collins was em-
ployed by the latter to do housework for them, for a compen-
sation to be paid weekly. Mary J. Collins was not married,
but she had one child. The defendant was unmarried, and
the family consisted of the persons just named. The defend-
ant lived on a farm, and his house consisted of a single room,
about sixteen feet square, in which we're two beds. One was
occupied by the defendant, and the other by Mary J. Collins;
and she had another child about two or more years after she
went to the defendant's house to live. This child was called
or known by the same name as the defendant, and there was
evidence tending to show that he knew such fact, and treated
the child as a father. He kissed Mary J. Collins, and exhib-
ited symptoms of jealousy. He was seen on one or two occa-
sions having sexual intercourse with her. Defendant's mother
remained a member of the family some two or three years
after Mary J. Collins came there to live, and after that time
the family consisted of Mary J. Collins, her two children and
the defendant, except at times there was a hired man who
formed one of the family. The defendant was a witnesss on
his own behalf, and testified that Mary J. Collins was his
servant, and that he treated her as such, and not as his wife.
There was other evidence so tending. While occasional acts
of sexual intercourse alone may not be sufficient—and it was
so held in *The State v. Marvin* before cited—such acts at
least show the disposition of the parties, and, when the oppor-
tunity is shown and has continued for a long series of years,
we think such evidence is entitled to great consideration.
This is true as to evidence showing affection for each other,
such as kissing. Men do kiss their wives, but ordinarly do
not kiss their servant girls. The birth of a child, and the
name given to it, were entitled to consideration as tending to
show undue intimacy. No virtuous woman would live and
sleep in the same room with an unmarried man for years, as
this woman did. When all the circumstances are considered,
we think the jury were fully warranted in concluding that the

claim that Mary J. Collins was the defendant's servant, and sustained no other relation to him, is a mere pretense and subterfuge; and that the jury were warranted in concluding that, in all essential particulars, these parties acted as and sustained the relation of husband and wife, and yet they were not married. We do not see how any other conclusion could be reasonably reached. The evidence sustains the verdict, and is not contrary to the instructions.

IV. What has been said sufficiently indicates that the court did not err in refusing the instructions asked. For the most part they are fully covered by those given by the court.

It is said that there was evidence tending to impeach one or more of the witnesses for the state, and that the court <span>4. INSTRUC-TION: as to legal effect of impeaching witness: when not required.</span> erred in failing to instruct the jury as to the "legal effect of such impeachment." No instruction was asked on this subject by the defendant, and the court did say to the jury that they were the "sole judges of the credibility of the witnesses, and of the weight to be given to their testimony." We cannot say that the court erred in failing to say more than it did. This case is clearly distinguishable from *The State v. Brainard*, 25 Iowa, 572. The impeachment of the witnesses did not constitute a defense, but its only effect was to lessen their credibility. The issue and defense were clearly and fully stated to the jury, and the failure of the court claimed by counsel should not, in this case, we think, constitute reversible error.

V. The defendant was admitted as a witness on his own behalf, and evidence was introduced tending to show that his <span>5. CRIMINAL evidence: bad moral character of defendant.</span> moral character was bad. To such evidence the defendant objected, and it is insisted that the court erred in admitting it. It is provided by statute that "the moral character of the witness may be proved for the purpose of testing his credibility." Code, § 3649. We presume this section was overlooked by counsel.

Certain rulings of the court in admitting evidence are assigned as error, and counsel in a general way insist on them

in argument. But in relation thereto, or to some of such assignments, it is said that it is true that this of itself would not be sufficient to reverse the case, but that, when the entire record is examined, it will be found that the defendant did not have a fair trial. In this we do not concur. On the contrary, we think the defendant was fairly tried and justly found guilty. None of the objections to the admission of evidence are well taken, as, we think, has been sufficiently indicated.

AFFIRMED.