State v. Chandler.

THE STATE v. CHANDLER, *Appellant.*

Division Two, January 21, 1896.

1. **Criminal Law**: LASCIVIOUS COHABITATION: EVIDENCE. Evidence that a man and woman, each of whom was married, but not to the other, were guilty of clandestine sexual intercourse is insufficient to sustain a conviction under Revised Statutes, 1889, section 3798, making it a misdemeanor "for a man and woman, one or both of whom are married and not to each other" to "lewdly and lasciviously abide and cohabit with each other." To sustain a conviction in such case it must be shown that the parties lived together as man and wife.

2. **Statute, Adoption of from Another State**: INTERPRETATION. When a statute or a controlling word in it has received adjudication in the state where it originated, and that statute in substance, or its controlling word, has been adopted in another state, it will be presumed that it was adopted with the meaning that had theretofore attached to it in the state of its origin.

3. **Constitutional Law**: STATUTE: MISDEMEANOR, IMPRISONMENT FOR. A statute authorizing the punishment of misdemeanors by imprisonment in the workhouse is not for that reason unconstitutional.

4. ——: ——: PRACTICE. The question of the constitutionality of a statute may be raised by motion in the trial court.

5. ——: ——: TRANSFER OF CAUSE FROM COURT OF APPEALS TO SUPREME COURT: JURISDICTION. Where a case is transferred from the St. Louis court of appeals to the supreme court because of a motion in the trial court raising the constitutionality of a statute, the supreme court has jurisdiction to determine the whole case on its merits, notwithstanding the trial court correctly ruled the point relative to the constitutionality of the statute.

*Appeal from St. Louis Court of Criminal Correction.*
HON. DAVID MURPHY, Judge.

REVERSED.

*Charles T. Noland* for appellant.

The evidence did not establish a "lewd and lascivious abiding and cohabitation," within the meaning of the statute. At most the facts simply showed circumstances from which adultery in secret might be inferred. They totally failed to show any ostensible "living together" as husband and wife. R. S. 1889, sec. 3798; *State v. Crowner*, 56 Mo. 147; *State v. Osborne*, 39 Mo. App. 372; *State v. Dameron*, 8 Mo. 494; *State v. Berry*, 24 Mo. App. 466; *State v. Osborne*, 69 Mo. 143; *State v. Hinson*, 7 Mo. 244; *State v. Bes*, 20 Mo. 419; *Pruner v. Com.*, 82 Va. 20; *Jones v. Com.*, 80 Va. 20; *McLeland v. State*, 25 Ga. 477; *Smith v. State*, 39 Ala. 554; *People v. Gates*, 46 Cal. 52; *Richardson v. State*, 37 Tex. 346; *Carrotti v. State*, 42 Miss. 334; *Duster v. State*, 23 Fla. 339; *Pinson v. State*, 28 Fla. 735; *Brown v. State*, 8 S. Rep. (Miss.) 257; *Bird v. State*, 27 Tex. App. 635; *Wright v. People*, 13 Ill. 507; *Yardley's Estate*, 75 Pa. St. 207; 1 Bishop Crim. Law, sec. 501; Bishop Stat. Crimes [2 Ed.], secs. 712, 702, 721; *State v. Marvin*, 12 Iowa, 499; *Delaney v. People*, 10 Mich. 241; *State v. Sekrit*, 130 Mo. 401; *Sullivan v. State*, 32 Ark. 187.

*R. F. Walker*, attorney general, and *Ford Smith* for the state.

The evidence sufficiently proves the offense. It is not necessary to prove that the acts were open and notorious, or that they held themselves out as man and wife, or any ostensible living together as such. *State v. West*, 84 Mo. 440, *loc. cit.* 441, 442; *State v. Berry*, 24 Mo. App. 466, *loc. cit.* 467–469; *State v. Clawson*, 32 Mo. App. 93, *loc. cit.* pp. 95, 96; *State v. Coffee*, 39 Mo. App. 56; *State v. Osborne*, 39 Mo. App. 372, *loc. cit.* 375; *Collins v. State*, 14 Ala. 608, *loc. cit.* 609; *Hall v. State*, 53 Ala. 463, *loc. cit.* 465; *Bodiford v. State*, 86 Ala. 67, *loc. cit.* 68; *State v. Jolley*, 3 Dev. & Batt. 110, *loc. cit.* 115; *Swancoat v. State*, 4 Tex. App. 105, *loc. cit.* 117; *Parks v. State*, 4 Tex. App. 134, *loc. cit.* 138, 139; *Commonwealth v. Mosier*, 135 Pa. St. 221; *Commonwealth v. Clifford*, 145 Mass. 97; *Pruner v. Commonwealth*, 82 Va. 115, *loc. cit.* 118; *People v. Girdler*, 65 Mich. 69. It is not necessary to constitute the offense under the second clause of section 3798, Revised Statutes, 1889, under which this information was drawn, that the parties should live together "ostensibly" as man and wife, or that their acts of illicit intercourse should have been open and notorious. Under our procedure, the question as to the constitutionality of an act of the general assembly can be raised by incorporating same in the motion for a new trial or in arrest, and preserving the same in the record. *Bennett v. Railroad*, 105 Mo. 642. The question of the place of imprisonment has been passed on by this court adversely to defendant's contention. *In re Jilz*, 3 Mo. 243, pp. 245, 246, 247; *Ex parte Thomas*, 10 Mo. App. 24, pp. 26–29. A law making it a misdemeanor to do an act in a part of the counties of the

state only, is not a violation of this section as depriving one of liberty without due process of law, nor is it a violation of the fourteenth amendment to the constitution of the United States.   See *State v. Moore*, 104 N. C. 714; *Davis v. State*, 68 Ala. 58.   Besides, the law sending misdemeanor convicts to the workhouse is a general law applicable to all counties of the state, and it does not appear from the record in this case that every sentence of imprisonment pronounced in a misdemeanor case in the state is not a sentence to imprisonment in a workhouse.   Section 32 of the act of 1869 (Appendix Rev. Stat. 1889, p. 2156) authorizes the court of criminal correction to sentence to the workhouse in misdemeanor cases.   But section 4266, Revised Statutes, 1889, also authorizes the court of criminal correction, and every other court in the state, to sentence to the workhouse in misdemeanor cases. This takes away the inequality of which defendant complains; for all within the state are subject to a workhouse sentence.

SHERWOOD, J.—I.   This cause appealed to the St. Louis court of appeals has been transferred to this court, because of a motion made in the lower court, which raises the question of the constitutionality of the law which allows a party to be punished by imprisonment in the workhouse of the city, on conviction of a misdemeanor.

The prosecution, which resulted in a conviction and sentence of defendant to the workhouse, and the payment of a fine of $500, was founded upon section 3798, Revised Statutes, 1889.

"Every person who shall live in a state of open and notorious adultery, and every man and woman, one or both of whom are married, and not to each other, who shall lewdly and lasciviously abide and

cohabit with each other, and every person, married or
unmarried, who shall be guilty of open, gross lewdness
or lascivious behavior, or of any open and notorious
act of public indecency, grossly scandalous, shall, on
conviction, be adjudged guilty of a misdemeanor."

The information in this case in its material portion
is as follows:

"That Henry W. Chandler, in the city of St.
Louis, on the thirteenth day of March, 1895, did then
and there and from that day continuously until the
twenty-third day of March, 1895, unlawfully, lewdly,
and lasciviously abide and cohabit with one Kitty
Coyle, and the said Henry W. Chandler and the said
Kitty Coyle then and there continuously during the
aforesaid time did unlawfully, lewdly, and lasciviously
abide and cohabit with each other and then and there
have sexual intercourse together, he, the said Henry
W. Chandler, being then and there a married man and
having a wife living, and she, the said Kitty Coyle,
then and there being a married woman and having a
husband living, and they, the said Henry W. Chandler
and Kitty Coyle, not being then and there married to
each other, contrary to the form of the statutes in such
cases made and provided, and against the peace and
dignity of the state."

The testimony discloses in substance this state of
facts: Defendant was married and lived with his wife
and children at Thirty-first and Olive streets, in St.
Louis. "Kitty Coyle," whose name appears conjoined
with that of defendant in the information, lived with
her husband, James F. Coyle, at his residence, 4213
Washington avenue, in the same city. Coyle and his
wife had been married since April 3, 1873. The various
parties mentioned had, it seems, been acquainted for
some ten years.

Owing to certain sounds or whistles heard by Coyle

when he was at home at night on the tenth or eleventh of March, 1895, and to the catching sight of defendant immediately thereafter in front of his house, Coyle's suspicions were aroused, and as business called him away to Denver on the twelfth of March he employed, before leaving, detectives to watch his residence, and defendant, during his absence. The evening after his departure, namely, March 13, 1895, a detective, who had hidden himself in Coyle's cellar where he could' have a view of the front door, saw defendant after nightfall approach Coyle's house and enter without being admitted by another. During each succeeding night from the thirteenth until the twenty-third of March, 1895, defendant was seen at different hours after night, from 7:30 to 11:30 o'clock, to enter Coyle's residence by unlocking the front door and depart therefrom at from 5 to 5:35 o'clock each morning. During this period Mrs. Kitty Coyle and two servant girls were the only regular inmates of the Coyle residence. Upon Coyle's return to the city on the night of the twenty-third of March, 1895, instead of at once hastening home he took into his counsel one Ford Smith, who it appears was his legal adviser, and in company with him and four others, two of whom were detectives (who had kept watch over the defendant and Mrs. Coyle's maneuvers during the husband's absence), he repaired to his home. Two of the party remained on the sidewalk in front of the house, to keep a lookout, while two went in through the front door and the other two entered at the rear of the building. Proceeding stealthily to the bedchamber of Mrs. Coyle, they entered and found defendant in bed with her, each being arrayed in their nightgowns.

The section of the statute already quoted, embraces *five* offenses: *First,* living in a state of open and notorious adultery by two persons of opposite sexes,

one or both of whom are married, but not to each other; *second*, a man and woman, one or both of whom are married, but not to each other, who lewdly and lasciviously abide and cohabit with each other; *third*, every person, married or unmarried, guilty of open, gross lewdness; or, *fourth*, lascivious behavior; or, *fifth*, of any open, notorious act of public indecency, grossly scandalous.

The offense here charged evidently falls within the second of those subdivisions, and the question arises whether the evidence sustains the charge. It is not believed that it does. There is nothing to show that defendant or his *paramour lived together as husband and wife*. Webster says *"cohabit"* means "to dwell or live together as husband and wife." Webst. Int. Dict. Bouvier defines the term: "To live together in the same house claiming to be married; to live together in the same house."

In an early case in Massachusetts, probably the earliest one of the sort occurring in this country, a prosecution was had under the statute of 1784, which provided, "that if any man and woman, either or both of them being then married, shall lewdly, and lasciviously associate and cohabit together, they shall be punished by," etc. Whereupon the court remarked: "By cohabiting must be understood a dwelling or living together, not a transient and single unlawful interview. The design of the statute, in this particular provision, was to prevent evil and indecent examples, tending to corrupt the public morals." *Com. v. Calef*, 10 Mass. *153.

It will be presumed that our legislators were not unfamiliar with the meaning attached to the word in question, by earlier adjudications on that word. And when a statute or controlling word in a statute has

received adjudication in the state where the statute originated, and that statute in substance, or its controlling word, has been adopted in another state, it will be presumed that it was adopted with the meaning which had therefore attached to it in the state of its origin.

Virginia has a statute very much resembling that of Massachusetts previously quoted, which provides: "If any persons, not married to each other, lewdly and lasciviously associate and cohabit together," etc., etc. And in construing this statute FAUNTLEROY, J., observes: "The terms 'not married to each other' and 'lewdly and lasciviously associate and cohabit together' clearly explain the meaning of the statute as intended to apply to cases where a man and a woman, 'not married to each other,' live together as man and wife live together, without the sanction of the nuptial tie. There must be 'cohabitation,' and there must be *lewd and lascivious* cohabitation. There must be a *living* together. * * * Obviously the legal sense of the term in the statute is to live together, in the same house as married persons live together, or in the manner of husband and wife. * * * The conjunction '*and*,' in the phrase of the section, is essentially and indispensably copulative; there must be both— lewd and lascivious intercourse, *and* a living together of the parties as husband and wife live together—to constitute the offense of lewd and lascivious association and cohabitation." *Jones v. Com.*, 80 Va. 20.

Touching this topic, AGNEW, C. J., remarks: "Loose notions seem to prevail as to what *cohabitation* is. It is not a sojourn, nor a habit of visiting, nor even a remaining with for time. None or these fall within the true idea of cohabitation. * * * The legal idea of cohabitation is that which carries with it a natural belief that it results from marriage only. To cohabit,

is to live or dwell together; to have the same habitation." *Yardley's Estate*, 75 Pa. St. 207.

In Florida, under a statute substantially identical with that of Virginia, a similar ruling has been made to that already quoted, to wit, that the evidence must show "a dwelling or living together by the parties as if the conjugal relation existed." *Luster v. State*, 23 Fla. 339.

In Mississippi, the statute read: "If any man and woman shall unlawfully cohabit, whether in adultery or fornication, they shall be fined," etc. And upon this statute, a ruling like the ones previously mentioned was made. *Carrotti v. State*, 42 Miss. 334.

This case was approvingly followed by that of *Kinard v. State*, 57 Miss. 132, where in commenting on that case, it is said: "The decision is that no continuance of illicit intercourse makes out the crime so long as it is secret or attempted to be made so, but that, whenever secrecy is abandoned and the concubinage is open, the offense is complete. In the interests of morality, it is perhaps to be regretted that a more rigorous doctrine can not be deduced from our present statute and the decisions upon similar statutes elsewhere."

Acting upon this hint, the legislature of Mississippi in 1880 added to the statute these words: "And it shall not be necessary to constitute the offense, that the parties shall dwell together publicly as husband and wife, but it may be proved by circumstances which show habitual sexual intercourse." *Granberry v. State*, 61 Miss. 440. Thus sanctioning by legislative enactment a prior judicial construction.

See, also, Bishop Stat. Crim. [2 Ed.], sec. 712; *Ibid.*, Mar. & Div., sec. 777; *Sullivan v. State*, 32 Ark. 187; *State v. Marvin*, 12 Iowa, 499; *Richardson v. State*, 37 Tex. 346; *State v. Sekrit*, 130 Mo. 401.

In the present instance, there is an entire absence of any evidence tending to show *"cohabitation"* between the parties implicated, in the sense and meaning of the word as declared by the standards of our language and ·as settled by frequent adjudications.

*It is not the object of the statute to establish a censorship over the morals of the people, nor to forbid the violation of the seventh commandment. Its prohibitions do not extend to stolen waters nor to bread eaten in secret.* Its evident object was not to forbid and punish furtive illicit interviews between the sexes, however frequent and habitual their occurrence; but only to make such acts punishable as it plainly designates; acts which necessarily tend by their openness and notoriety, or by their publicity to debase and lower the standard of public morals. Here the interviews between the guilty parties were *entirely clandestine;* even the servants of the household where the *liaison* had its headquarters, were not aware of the occurrences which form the basis of the present prosecution. In such circumstances to hold that defendant and his paramour did *"abide and cohabit with each other,"* would be to pervert the plain words of the statute, and to convict without evidence.

II. It has been ruled by this court that a statute was constitutional which authorized the punishment of misdemeanors by confinement in the workhouse. Therefore, the lower court was right in holding as it did with regard to the validity of the statute. It was competent, however, to raise the point of the constitutionality of the statute by motion in the lower court. *Bennett v. Railroad,* 105 Mo. 642.

III. But notwithstanding the point was correctly ruled by the lower court, relative to the constitutionality of the statute in regard to sentencing defendant to the workhouse, still he had the right to raise the question, and this question being raised would give this

court jurisdiction to hear and determine the whole case upon the merits.

Inasmuch, for reasons heretofore given, the state has no standing in this court, on the merits of the cause, as there is a failure of proof, the judgment should be reversed and defendant discharged. It is so ordered. All concur.