FREMONT E. MUSFELT ET AL. V. STATE OF NEBRASKA.

FILED APRIL 17, 1902.    No. 12,340.

1. Evidence: FORNICATION: SILENCE UNDER ACCUSATION. When, be-
   fore prosecution, and while not under restraint, parties are
   accused of living together in a state of fornication, and make
   no denial, or are silent, this may be shown in evidence as an
   inculpatory circumstance to be weighed and considered by the
   jury in determining the truth of the charge preferred against
   them.

2. Conflicting Evidence. When the testimony is conflicting, and is
   fairly submitted to a jury, a new trial will not be granted if
   the testimony is sufficient to sustain the verdict. *Van Buren v.
   State*, 63 Nebr., 453.

3. Evidence. Evidence examined, and *held* sufficient to sustain a ver-
   dict of guilty.

4. Instructions: FORNICATION: OPEN AND NOTORIOUS COHABITATION.
   In a prosecution for the offense of living together in a state
   of fornication, it is not error to instruct the jury that it is
   not necessary the cohabitation charged in the complaint should
   be either open or notorious.

5. ———: TENDER: ERROR. Where it is claimed an instruction which
   states no erroneous proposition of law is not sufficiently ex-
   plicit, it is the duty of counsel to prepare and submit an
   instruction fully covering the point in issue, and which must
   be refused before error can be predicated on the court's action
   in giving the instruction complained of.

6. Impeaching Question. Record examined, and *held*, foundation for
   an impeaching question was laid with sufficient certainty, and
   that no error was committed in permitting the question to be
   answered over objection thereto.

ERROR from the district court for Rock county.    Tried
below before HARRINGTON, J.    *Affirmed.*

*R. R .Dickson* and *F. N. Morgan,* for plaintiffs in error.

*Frank N. Prout, Attorney General,* and *Norris Brown, Deputy,* for the state.

Holcomb, J.

The defendants, each of whom was unmarried, were charged with the offense of living in a state of fornication, and on a trial of the charge the jury returned a verdict of guilty. Sentence was duly pronounced, and to secure a reversal of the judgment rendered against them they prosecute error.

It is first urged that the evidence introduced in support of the charge is insufficient to establish the offense for which they were prosecuted, or support the verdict of guilty as returned by the jury. A careful reading of all the testimony preserved in the bill of exceptions, and brought here for review, convinces us that the jury's finding can not rightfully be disturbed. There appears in the record sufficient competent evidence to sustain the verdict. Much of the testimony offered by the state and by the defendants, respectively, was of a most contradictory character; and manifestly the testimony of different witnesses on the one or the other side in respect of many matters material to the issue raised by the plea of not guilty, would have to be rejected in whole or in part by the jury, as unworthy of credence, and because in irreconcilable conflict. It was the especial province of the jury, as triers of fact, after hearing the witnesses testify, and observing their demeanor while on the witness stand, to sift the testimony submitted to them, rejecting that unworthy of belief, and from all the evidence ascertain the truth or untruth of the charge. There is in the record testimony, the competency of which can not be questioned, of more than one witness, which, if believed by the jury, established all material allegations of the information, and excluded every rational hypothesis save that of the guilt of the accused.

The unlawful act was charged to have extended over a period of time from October 10, 1899, to the 2d day of February, 1901. The prosecution was begun soon after the date last mentioned. The defendant Musfelt was a man of thirty-five years of age, and his co-defendant twenty-one or twenty-two. The latter had by her parents been given a good education, with the object in view of qualifying her for the profession of teaching; apparently at great sacrifice, because of their limited circumstances. She obtained a certificate and began to teach, and, soon after, her unlawful relations with Musfelt are alleged to have had their inception. She was unable, because of her loss of moral standing and character, to obtain a renewal of her certificate; and thereafter, according to the theory of the defense, she obtained employment in different families and at hotels, where she gained a livelihood, and during which time defendant Musfelt was courting her as an admirer and lover, and with a view to a future marriage, which, we are informed in the brief of counsel for defendant, has since conviction been consummated. She first found employment, if it may be said she was in fact employed by any one other than Musfelt, in a family who lived at the home of Musfelt, and where he also resided. Notwithstanding the protests and importunities of her parents, she persisted in remaining at defendant Musfelt's house, where, with some few interruptions she continued to make her home, first with one family and then another, until near the time the prosecution began. It is remarkable that her services were always required in a family which for the time being occupied the house owned by Musfelt, and in which he resided, and that only at such times would such family find it convenient or necessary to employ her. During the time covered by the information, four changes of families occurred in the home of Musfelt, and as often his codefendant changed families, by whom, according to the theory of the defendant, she was employed in the capacity of a servant girl or domestic.

It is fairly inferable from the record before us that the

different families occupying Musfelt's house were apparently in quite impoverished condition, without any permanent home, shifting from place to place wherever a temporary abode could be secured; and it is passing strange that the occasion to employ some one else to assist in their household duties, and the necessity therefor, only existed while making their home at Musfelt's, and ceased as soon as they departed therefrom. The theory of the defense is greatly shattered by many of the facts indisputably established by the evidence. The mother testifies that she visited her daughter at Musfelt's house, during the fall and winter of 1899 and 1900, twenty or more times, for the purpose of prevailing on her daughter to return home; that her daughter was keeping house for Musfelt; that at one time she was preparing a meal, and, by the plates, saucers and other table articles, the supper was being prepared for but the two; that the family then living in the house was occupying a separate room; and that, to all appearances, there were two families in the one house. These importunities and pleadings for the girl to return to her home were continued until, in frenzied anger, the mother seized an ax and threatened Musfelt with bodily injury, when she was forcibly ejected from the premises and ordered never to return. She testifies, and it is uncontradicted, that she repeatedly accused the defendants of living together in an unlawful state, to which they entered no denial, but remained silent. Not only were the actions of the parties and their relation to each other a proper subject for inquiry, and the introduction of evidence thereon, but their demeanor and conduct when accused, while not under restraint, as well as what they say, or their silence, may be shown in evidence as inculpatory circumstances to be weighed and considered by the jury in determining the truth of the charge preferred against them. *State v. Hill,* 36 S. W. Rep. [Mo.], 223; *Ettinger v. Commonwealth,* 98 Pa. St. 338.

Another witness, a girl of mature years, and whose testimony has the appearance of being disinterested, and

prompted solely by a desire to speak the truth, who was a member of one of the families residing in the house of Musfelt for a short time, testified that the family of which she was a member occupied the east room on the first floor of a four-roomed house, two of which were on the first floor, and two on the second; that the two defendants occupied the west room below for a living room, and the two rooms on the second floor for sleeping rooms; that the stairway leading from the first to the second floor was located in the west room, which was the only means of communication to the upper west room, through which a person passed in going to the east room up stairs; that the defendant Kitty Claus did the household work for her codefendant, and tended to his stock when he was away. Much other evidence of a corroborative character was introduced, which it will serve no useful purpose to advert to in detail. At times the defendant Musfelt would send the girl away for a period of time, sometimes to a hotel, where she would find employment, and at other times to his relatives. The defendants undertake to excuse their actions on the ground that they were courting, and at the time of the trial were engaged to be married. It is altogether clear that their relations were not those of honorable regard and mutual admiration, when gauged by any recognized moral standard. It is hardly conceivable that the defendant Musfelt, had his intentions toward his codefendant been honorable, and his motives pure, would have subjected her to the scandal and suspicion naturally arising from their conduct as disclosed by the evidence. As heretofore stated, the testimony in many respects was flatly contradictory, and required of the jury discrimination in determining that which was worthy of belief and that which should be rejected as incredible; and with the conclusion reached we are bound, unless it appears the verdict is clearly wrong. The rule is that, when the testimony is conflicting and is fairly submitted to a jury, a new trial will not be granted if the testimony is sufficient to sustain the verdict. *Van Buren v. State*, 63 Nebr., 453.

The evidence, we are constrained to say, is sufficient to support the verdict, and the defendants' contention to the contrary can not be sustained.

Complaint is made of an instruction to the jury wherein they were told that it was not necessary the cohabitation charged in the complaint should be either open or notorious. We find no objection to the instruction. It follows the statute. The gist of the offense is the unlawful cohabitation,—that is, living together as man and wife while each was unmarried. If the accused lived together openly and notoriously as husband and wife, this would be proof positive of the violation of the law; but nevertheless the offense is committed when there is evidence sufficient to satisfy the minds of the jury that for any period of time covered by the information they cohabited together in a state of adultery,—whether it be for a week, month, year, or longer. It is not required by our statute that living in a state of fornication must be open and notorious in order to constitute the offense; hence there was no error in the giving of the instruction complained of.

Another instruction on the subject of circumstantial evidence is excepted to because, as contended, it was not stated with sufficient precision that the circumstantial evidence, in order to justify a conviction, must be such as to be consistent with guilt of the defendants of the offense charged, and inconsistent with any reasonable hypothesis of innocence. The instruction states no erroneous proposition of law. It is, as we understand counsel, admitted to be correct in so far as it extends. If the instruction was not deemed to be sufficiently explicit, it was the duty of counsel to submit and request the giving of one covering the point, and a failure to do so precludes the defendants from predicating error because of the court's action in that regard. *Gettinger v. State,* 13 Nebr., 308; *Pjarrou v. State,* 47 Nebr., 294.

Lastly it is contended that the foundation for an impeaching question was not sufficiently laid, and that error resulted in permitting the question to be asked over the

objection of the defendant.  The time of the conversation was given as the day preceding the one on which the question was asked, and the place laid in the town of Bassett, where the trial was being held.  Bassett is only a small village, and the question, we think, directed the witness's attention to the particular place with sufficient certainty. Certainly she was not misled, nor could any prejudice result, because the location of the alleged conversation was not specified more definitely.  There appears in the record no prejudicial error calling for a reversal of the judgment and sentence imposed on the defendants, and the same should be, and accordingly is,

AFFIRMED.