## STATE v. ALBERT F. GIESEKE.[1]

### May 29, 1914.

### Nos. 18,602—(7).

**Cohabitation.**

> If a man and an unmarried woman dwell together, and, while so dwelling together, make a practice of indulging in carnal intercourse, they cohabit within the meaning of section 8703, G. S. 1913, and are guilty of the offense there defined, although they may ostensibly dwell and associate together for some lawful purpose, and may conceal, or attempt to conceal, their immoral relations.

Defendant was charged in the municipal court of the city of Sleepy Eye with cohabiting with a single woman against the statute, was tried before Cutting, J., and a jury, and convicted and sentenced to pay a fine of $100 and costs or be committed to the county jail for a period not to exceed 90 days. From the judgment and sentence, defendant appealed to the district court for Brown county upon questions of law alone. From the judgment of the district court, entered pursuant to the decision of Olsen, J., affirming the judgment of conviction of the municipal court, defendant appealed. Affirmed.

*Tom Davis* and *Ernest A. Michel,* for appellant.

*Lyndon A. Smith,* Attorney General, *John C. Nethaway,* Assistant Attorney General, and *Adolph Frederickson,* County Attorney, for respondent.

[1] Reported in 147 N. W. 663.

125 M.—32.

TAYLOR, C.

Section 8703, G. S. 1913, provides: "Whenever any man and a single woman cohabit with each other, both shall be guilty of fornication."

Defendant, having been convicted, in the municipal court of the city of Sleepy Eye, of violating this statute, appealed to the district court upon questions of law alone. The district court affirmed the judgment of the municipal court, and by a further appeal defendant brings the case before this court.

The prosecution asks that the appeal be dismissed on the ground that no judgment has yet been entered in the district court. Counsel has apparently been misled by an error in the printed record. The record returned by the clerk shows that judgment was entered in the minutes of the district court; but in the printed record this judgment, instead of being printed as a part of the proceedings in the district court, is printed as a part of the record of the municipal court. Unlike the procedure in civil cases, the statute contemplates that in criminal cases the judgment shall be pronounced in open court, and the entry thereof be made by the clerk in the minutes. No entry of judgment other than the entry so made by the clerk is required. The judgment in question is sufficient in form and was properly entered in the minutes.

The only question for consideration is whether the evidence is sufficient to sustain the conviction. Defendant contends that "cohabit" as used in the statute means a dwelling together *as husband and wife;* and that the evidence failed to establish a cohabitation of that character.

The meaning and effect to be given the word "cohabit" has frequently been considered by the courts. In order to give it proper effect in any given case, regard must be had to the subject-matter to which it relates, to the situation and conditions in respect to which it is used, and to the explanatory and qualifying language accompanying it. Where it is sought to prove cohabitation as evidence that the relation of husband and wife existed between the parties, it means living together as husband and wife and holding themselves out as such, as distinguished from occasionally associating together

and from meretricious relations. Yardley's Estate, 75 Pa. St. 211; Brinkle v. Brinkle, 12 Phila. 232; Robinson v. Robinson, 188 Ill. 371, 58 N. E. 906; Olson v. Peterson, 33 Neb. 358, 50 N. W. 155. It has the same meaning in a prosecution for bigamy, where the bigamous marriage took place in another state and the prosecution is based upon the fact of cohabitation with the second wife in the state of the forum. Cox v. State, 117 Ala. 103, 23 South. 806, 41 L.R.A. 760, 67 Am. St. 166.

The case of the Commonwealth v. Calef, 10 Mass. 153, is referred to in the authorities as the earliest case to construe a statute making it a criminal offense to "lewdly and lasciviously associate and cohabit together," and is cited as establishing the doctrine that "cohabit" as so used means to dwell together as husband and wife. The sole question before the court in that case was whether a single act of intercourse, the parties not dwelling together, constituted the offense. The court held that it did not, saying: "By cohabiting must be understood a dwelling or living together, not a transient and single unlawful interview." In Jones v. Commonwealth, 80 Va. 18, the court said that a similar statute of Virginia was not designed to punish fornication or adultery, for the reason that other statutes provided a punishment for those offenses; and held that the term "cohabit" was used in this statute in the sense of living together in the manner of husband and wife. Under similar statutes it was given the same meaning in State v. Miller, 42 W. Va. 215, 24 S. E. 882. In State v. Chandler, 132 Mo. 155, 33 S. W. 797, 53 Am. St. 483, the statute imposed a penalty upon persons who "lewdly and lasciviously abide and cohabit with each other." The court say: "Its evident object was not to forbid and punish furtive illicit interviews between the sexes, however frequent and habitual their occurrence; but only to make such acts punishable as it plainly designates; acts which necessarily tend by their openness and notoriety, or by their publicity to debase and lower the standard of public morals. Here the interviews between the guilty parties were *entirely clandestine;* even the servants of the household where the *liaison* had its headquarters, were not aware of the occurrences which form the basis of the present prosecution. In such circumstances to hold that defendant and his

paramour did 'abide and cohabit with each other,' would be to pre-
vert the plain words of the statute, and to convict without evidence."

The above language perhaps went further than the facts of the
case required, as the defendant merely made secret visits to the
home of his paramour in the nighttime. In State v. West, 84 Mo.
440, and in State v. Coffee, 39 Mo. App. 56, it was held that the acts
constituting the offense need not be open and notorious. In State v.
Berry, 24 Mo. App. 466, the court say: "The statute does not make
the living together as man and wife one of the elements of the offense,
and hence it was not necessary for the jury to find that the defendants
did so live together." In State v. Osborne, 39 Mo. App. 372, the
court say: "The statute does not make it necessary that the lewd and
lascivious abiding and cohabiting together should have been as man
and wife, or in the ostensible character of man and wife;" but add
that the "element of dwelling together for the purpose of having lewd
and lascivious intercourse is a necessary ingredient of the offense
under the statute, and is necessary to discriminate the offense from
occasional acts of illicit sexual intercourse, which, according to the
decisions above cited, do not constitute the offense." In Carotti v.
State, 42 Miss. 334, 97 Am. Dec. 465, the statute makes it a crime
to "live together in unlawful cohabitation, whether the same be in
adultery or fornication." The court states that this language implies
cohabitation as husband and wife, but the question decided was that
the trial court erred in refusing to give an instruction to the jury,
asked by the defendant, and couched in the following language:
"That to justify a verdict of guilty, they must believe from the evi-
dence that the defendant, Mary Wilson, yielded her person, generally
or habitually, to her codefendant, Carotti, for the gratification of his
passions, as between husband and wife." In Kinard v. State, 57
Miss. 132, 134, the court limit the language used in Carotti v. State,
supra, and say concerning it: "The decision is that no continuance
of illicit intercourse makes out the crime so long as it is secret or
attempted to be made so, but that, whenever secrecy is abandoned
and the concubinage is open, the offense is complete." In State v.
Poyner, 57 Wash. 489, 107 Pac. 181, the statute made it a crime to
"lewdly and viciously associate and cohabit together." The court

say: "This statute is much broader than the common-law offense of lewdness, and, while there must be a living together as if the conjugal relation existed, and the illicit intercourse must be habitual, not merely occasional, it is not necessary that the acts should be open and notorious, or that the parties should hold themselves out to the public as husband and wife. State v. West, 84 Mo. 440; State v. Coffee, 39 Mo. App. 56; Commonwealth v. Lambert, 12 Allen 177; 29 Cyc. 210. "The statute includes illicit sexual intercourse and the irregular indulgences of lust whether public or private.'" In State v. Kirkpatrick, 63 Iowa, 554, 19 N. W. 660, involving a statute similar to the last, the court say: "While occasional acts of intercourse alone may not be sufficient—and it was so held in State v. Marvin before cited—such acts at least show the disposition of the parties, and, when the opportunity is shown and has continued for a long series of years, we think such evidence is entitled to great consideration. This is true as to evidence showing affection for each other, such as kissing. Men do kiss their wives, but ordinarily do not kiss their servant girls. The birth of a child, and the name given to it, were entitled to consideration as tending to show undue intimacy. No virtuous woman would live and sleep in the same room" [house contained but one room with two beds] "with an unmarried man for years, as this woman did. When all circumstances are considered, we think the jury were fully warranted in concluding that the claim that Mary J. Collins was the defendant's servant, and sustained no other relation to him, is a mere pretense and subterfuge; and that the jury were warranted in concluding that, in all essential particulars, these parties acted as and sustained the relation of husband and wife, and yet they were not married. We do not see how any other conclusion could be reasonably reached." In Sweenie v. State, 59 Neb. 269, 80 N. W. 815, the court say: "William J. Sweenie was convicted and sentenced under that provision of section 208 of the Criminal Code which makes it unlawful for any unmarried man to 'live and cohabit with a married woman in a state of adultery.' * * * It is conceded that Anna Lissa, with whom it is claimed that the alleged crime was committed, lived as a servant in defendant's home during the period in question. * * * It may

be well enough, however, to remark that a jury would be authorized, in a proper case, to presume the existence of an adulterous relationship, within the meaning of the statute, from sporadic acts of sexual intercourse. But what we decide in this behalf, and all we decide, is that no presumption of law, either conclusive or rebuttable, would arise from the fact that the defendant and Anna Lissa had sexual intercourse on one occasion while they were dwelling together in the acknowledged relation of master and servant. It is contended by defendant that the statute does not cover cases like the one at bar. We think it does. We think the legislature intended by sections 208 and 209 of the Criminal Code to make it unlawful for persons not joined together in wedlock to live in a state of adultery or fornication, either secretly or openly, and whether they profess to live in the marital state or not. If they cohabit, if they live after the fashion of husband and wife, they are within the letter of the statute, and, likewise, it seems to us, within its spirit." In Musfelt v. State, 64 Neb. 445, 90 N. W. 237, the statute made it a criminal offense for unmarried persons to, "live and cohabit together in a state of fornication." The court say [p. 450]: "If the accused lived together openly and notoriously as husband and wife, this would be proof positive of the violation of the law; but nevertheless the offense is committed when there is evidence sufficient to satisfy the minds of the jury that for any period of time covered by the information they cohabited together in a state of adultery—whether it be for a week, month, year, or longer. It is not required by our statute that living in a state of fornication must be open and notorious, in order to constitute the offense." In VanDolsen v. State, 1 Ind. App. 108, 27 N. E. 440, the defendant and the woman both resided at the home of the defendant's parents and their illicit relations continued for more than a year. The statute imposed a penalty upon "whoever cohabits with another in a state of adultery or fornication." The court [p. 110] say: "Counsel for appellant seems to regard it as essential to a conviction under this statute that the parties committing the offense shall represent themselves, or hold themselves out to others, as being husband and wife. With this view we cannot agree." With reference to the fact that the woman had performed services as a domestic

and received pay therefor the court [p. 111] say: "We are unable to regard the performance of such service, and the receipt of such compensation therefor, as sufficient to render the verdict contrary to the evidence otherwise sufficient." In Jackson v. State, 116 Ind. 464, 19 N. E. 330, the court say that the word "cohabit" as used in the above statute, "implies a dwelling together for some period of time, and it is to be understood as something different from occasional, transient interviews for unlawful and illicit intercourse. To sustain an indictment under this section, the evidence must establish cohabitation, including one or more acts of sexual intercourse, between the parties not lawfully occupying the relation of husband and wife to each other." In Shaw v. State, 49 Tex. Cr. R. 379, 91 S. W. 1087, the court say: "The charge is that appellant and Coons were committing adultery 'by living together.' A special charge was requested to the effect that in order to constitute this offense as charged, 'the parties must live together as man and wife,' which was refused by the court. It is not necessary that the parties should 'live together as man and wife' in order to constitute adultery under this phase of the statute. Bird v. State, 27 Tex. Crim. App. 635 [11 S. W. 641, 11 Am. St. 214]; Massey v. State, 3 Tex. Ct. Rep. 598 [65 N. W. 911.] It is only necessary that they live together and have intercourse; it need not be such a living together as man and wife." In Collins v. State, 14 Ala. 608, it was a criminal offense to "live together in adultery or fornication." The court say: "In the case at bar, the supposed paramour of the defendant lived but a half mile from his family residence, he visited and remained with her all of one night every week, for seven months, and sometimes oftener. This we think is quite sufficient to make out a *living together*, within the meaning of the statute." In Smith v. State, 39 Ala. 554, the court say: "It is not necessary, to constitute 'a living in adultery or fornication,' that the guilty parties should live together in the same house continually, as man and wife. Any habitual illicit intercourse between them, though living apart, will constitute the offense." In Bodiford v. State, 86 Ala. 67, 5 South. 559, 11 Am. St. 20, the same court again say: "To constitute a living in adultery, within the statute—Code of 1886, § 4012—a single, or occasional act, without more,

is not sufficient. There must be continuation, or an agreement for continuation, coupled with one or more acts, before it can be affirmed that the relation is established. It is a crime of darkness and secrecy, and hence always difficult of direct proof. On this account it is held that, when acts and complicating circumstances are proved, it becomes largely a question for the jury to determine, whether there was in fact such continuation as amounted to a living together, or, what is equivalent to it, a mutual guilty consent, express or implied, for such continuation. And the parties need not occupy the same dwelling, if there was a mutual expectation and understanding that the relation was to be kept up, or if in fact it was kept up, so as to satisfy the jury beyond a reasonable doubt (or, its equivalent, to a moral certainty) that there must have been such understanding." See also Winkles v. State, 4 Ga. App. 559, 61 S. E. 1128; Lawson v. State, 116 Ga. 571, 42 S. E. 752; State v. Cassida, 67 Kan. 171, 72 Pac. 522; State v. Jolly, 20 N. C. 108, 32 Am. Dec. 656.

To constitute the offense under the Arkansas statute, the parties must "cohabit together as husband and wife, without being married;" to constitute it under the California statute they must "live together in a state of open and notorious cohabitation and adultery;" to constitute it under the Illinois statute, they must live together in "an open state of adultery," and the courts of these states necessarily hold that the cohabitation must be of the character described in order to sustain a conviction. Sullivan v. State, 32 Ark. 187; People v. Salmon, 148 Cal. 303, 83 Pac. 42, 2 L.R.A.(N.S.) 1186, 113 Am. St. 268; Miner v. People, 58 Ill. 59.

Before the adoption of the penal code, our statutes contained one section making those who committed adultery guilty of a criminal offense, another section making those who committed fornication guilty of a criminal offense, and another section making those who lewdly and lasciviously cohabited and associated together guilty of a criminal offense. The penal code repealed both the provision as to fornication and the provision as to lewd and lascivious cohabitation, and substituted in lieu thereof the following: "Whenever any man and a single woman cohabit with each other, both shall be guilty of

fornication." Under one of the repealed provisions, a prosecution could have been brought for lewd and lascivious cohabitation with a married woman; under the above provision, prosecutions are limited to immoral conduct between a man and an unmarried woman. The descriptive words, "lewdly and lasciviously," used in defining the offense against which the former statute was directed, are omitted from the new; and, if the use of those words in the definition of the offense, made it necessary that the immoral acts be committed in some special, or peculiar, or public manner of indecency, in order to constitute the offense, such special, or peculiar, or public indecency is not an element of the offense defined in the new statute. Under the other repealed provision, a single act of intercourse with an unmarried woman constituted the offense; under the new provision, the parties must "cohabit" in order to constitute the offense. The present statute is so materially different from either of the repealed provisions and from the statutes considered in the decisions which we have cited, that rulings made as to such statutes do not accurately state the effect of this statute. It takes the word cohabit used in the statutes directed against lewdly and lasciviously cohabiting and associating together, and uses it to define an offense which it declares to be fornication. The term fornication has a definite, well understood meaning, and a single clandestine act of intercourse constitutes fornication in the usual acceptation of the term. This statute is evidently directed against those immoral acts which constitute fornication, except as its effect is limited by the meaning to be given to the term "cohabit." In State v. Williams, 94 Minn. 319, 102 N. W. 722, it was held that this term as used in this statute means "to live and dwell together," and that a single act of illicit intercourse did not constitute the offense. We think it clear, however, that the "dwelling together" need not be in the apparent character of husband and wife, nor the improper relations be open or notorious. The statute does not make such elements ingredients of the crime. Single or sporadic acts do not constitute the offense, but if the parties dwell together for some period of time, and, while so dwelling together, make a practice of indulging in sexual intercourse, they cohabit within the

meaning of the statute, even if they ostensibly live and associate together for some proper purpose, and conceal or attempt to conceal, their illicit relations.

In the present case, the defendant, his wife and five children resided upon a farm. The girl, Susie Beckius, began residing with them in the latter part of 1911 and was still residing with them at the time of the trial in June, 1913. The evidence indicates that during all this period, defendant and the girl worked together about the farm and frequently went riding together; that they were guilty of immoral acts; that he was constantly with the girl and seldom with his wife; and that he had stated that he would have been richer if he had had the girl for a wife, and that they would never part. In February, 1913, the girl entered a hospital in Minneapolis and gave birth to a child. Defendant went to Minneapolis twice, visited her in the hospital on different days, made arrangements by which the child was placed in a maternity hospital, and he and the girl returned to his home together where the girl has since remained. None of the members of the household took the witness stand, and the evidence is confined wholly to the testimony of outsiders, but it is sufficient to sustain a finding by the jury that immoral relations between defendant and the girl had existed for an extended period of time. Under the evidence it was for the jury to say whether they dwelt together, and, if so, whether, while so dwelling together, they made a practice of indulging in sexual intercourse. A dwelling together accompanied by such intercourse, for some period of time, constitutes cohabitation within the meaning of the statute.

Judgment affirmed.