GEORGE BREVALDO, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Upon an indictment for living in an open state of adultery *on a certain day and on divers other days and times since said date to the day of the finding of the indictment,* evidence of acts anterior to such time are admissible in evidence as tending to illustrate or explain similar acts within the period alleged in the indictment, or to corroborate testimony of such latter acts, but not to convict of a substantive offence committed anterior to such period.

2. Where there has been a conviction upon such an indictment, and there is no evidence of a living in an open state of adultery within the limited period, but there is proof of such a living about a year prior to the first day of such period, a new trial should be granted, the introduction of such evidence having been properly excepted to.

Writ of error to the Circuit Court for Suwannee county.

The facts of the case are stated in the opinion.

*White & White* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

MR. JUSTICE RANEY delivered the opinion of the court:

The plaintiff in error was convicted at the Spring Term of the Circuit Court for Suwannee county in the year 1885, charging that he, " on the eleventh day of June, A. D. 1884, and on divers days and times since said date to the finding of this indictment," lived in an open state of adultery with one Adarine Jackson as his wife, she being a married woman and her husband being alive and the plaintiff in error not being her husband. The indictment was found on the eighth day of November, 1884.

The statute, §3, page 375, McC. Digest, provides that " whoever lives in an open state of adultery shall be punished," * * and that " where either of the parties living in an open state of adultery is married, both parties so living shall be deemed to be guilty of the offence provided for in this section."

The State introduced as a witness one James Cope, a brother of Adarine Jackson, and offered to prove by him that in June, 1883, the plaintiff in error and Adarine returned to her father's house in Suwannee county from Nassau, in one of the Bahama Islands, bringing with them two children. The plaintiff in error objected because the matter proposed to be proved occurred long anterior to the date of the crime alleged to have been committed in the indictment, but the court overruled the objection and an exception was taken. The State was also allowed to prove by

the same witness against a similar objection and exception of plaintiff in error that in said month of June, 1883, the plaintiff in error on his return from Nassau stated to her father's family that Adarine was his lawful wife, and the only woman in the world he cared for or wanted to live for, and that this being believed to be true the family admitted them to their father's house as husband and wife, and Brevaldo remained there two or three days and nights and then went away from them for a few days on business, leaving Adarine, and that he returned in a day or two; and so kept on for a month or more, at the end of which time witness heard it rumored that Brevaldo had again married his former but divorced wife, Emma Brevaldo, and on a return of Brevaldo, told him of it and he denied the same vehemently. That upon this denial Brevaldo was permitted to remain in the room that night with Adarine, but that afterwards witness saw an announcement of the marriage in " the newspaper."

The State also introduced as a witness, John H. Cope, the father of Adarine, and the plaintiff in error objected to his telling anything prior to the 11th day of June, 1884, the date alleged in the indictment, but the objection was overruled and the witness was permitted to testify as to Brevaldo and Adarine's return in June, 1883, and Brevaldo's representing they were married and their staying at his house and that "they slept together at night," or that he judged they did as Brevaldo went into her room, and as to Brevaldo's denial to witness of the rumor as to his marriage to his former wife, and going off and staying two or three weeks, and then acknowledging such marriage.

The correctness of these rulings, and the refusal of the Judge to grant a new trial, moved for on the ground of such rulings and because the verdict was contrary to the

law and the evidence, are the basis of the assignment of error.

On account of the view we take of the case it is necessary to ascertain what is the effect of the other testimony introduced in proving the offense within the period specified in the indictment. John H. Cope says that after Brevaldo confessed his marriage to his former wife, he asked witness if he might come to see his children and witness, as he did not think it was wrong, told·him he might, and after that when he did come witness put him to sleep with the boys, who slept in another room from Adarine. The only night he *slept* at the house after the confession was in 1884. He testified also that Brevaldo would come " sometimes in a week or two " and sometimes "not come in a month;" he would come after breakfast and stay until the evening, and then go away ; he appeared fond of his children and he and Adarine were sometimes together in company with the family or some one of them, but witness did not know of their being by themselves together. He would bring things for the children, of whom he seemed fond, to eat, and pretty well clothed and shoed them. " Before Brevaldo married his old wife, he and Addie treated each other as if they were married together; after he had acknowledged that he had married his old wife, when he came there he acted like a gentleman. Reports got out all through the country so that I told Brevaldo that he must stop coming there, and that if he wanted to give his children anything he could send it to them. The above occurred in 1883." He specifies but two nights which Brevaldo spent at his house after the confession, and these were in 1884, and on one of them witness put him in the room with his, witness', "boys" to sleep, and his staying at the house that night seems to be accounted for by the witness by the fact of an unsuccessful attempt to drive away

to Live Oak, a cow which he had bought from witness' son, and which consequently he had to butcher at his house, witness inviting him to stay that night. The other night he set up with one of his and Adarine's children, who was very ill, Adarine having sent for him. Upon his cross-examination he says Brevaldo, 1884, always came in the day time and went away before night, and he never saw anything improper between him and Adarine, and does not know that they were together by themselves. Upon the re-direct examination he says that when he told Brevaldo he must stop coming to his house, he, B., proposed to take Adarine and the children off, and witness sent her off to Live Oak in his conveyance and don't know where she now is. The other State's witness, James Cope, said he knew of no improper intimacy or connection between them in 1884, says it was in fall of 1883 that his father forbid Brevaldo's coming to his house, and that he quit coming except on business; came three times in 1884; on two of these occasions to buy cows; on one occasion, in 1884, he says that Brevaldo and Adarine "were together for a short time in the yard. It was in the day time; the family of my father were at and in the house; they were together in the yard a very short while; I never knew of their being off together at any other place; they took two walks in the day time; one time they walked around the garden in full view of the house, about thirty-five yards distant from the house; the growth around the house was thick and they could have been obscured. At another time they walked out about two hundred yards from the house in view of the house, round the fence, in the day time." Upon cross-examination, he stated that he knew of no illicit intercourse between them between the second day of June, 1884, and the finding of the indictment; that when he came to the house in 1884, he came to see his children; he was invited some-

times " by us to come," and by witness once ; slept with witness the night of the day the cow was butchered.

Viewed in the light of the authorities, it is clear there is not sufficient evidence here to establish the offence of living in an open state of adultery within the period charged in the indictment. In Searles vs. People, 13 Ill., 597, the indictment was for living in an open state of fornication and the court say : " In order to constitute this crime the parties must dwell together openly and notoriously upon terms as if the conjugal relation existed between them. The object of the statute was to prohibit the public scandal and disgrace of the living together of persons of opposite sexes notoriously in the illicit intimacy which outrages public decency, having a demoralizing influence upon society. They may, indeed, live together in the same family, but if apparently chaste, regularly occupying separate apartments, a single instance of illicit intercourse would not constitute the crime of living together in an open state of fornication." * * * "From the very nature of the case the offence must generally be proved by circumstances, and the statute provides that it ' shall be sufficiently proved by circumstances which raise the presumption of cohabitation and unlawful intimacy' ; but this presumption must be something more than a mere suspicion. It must amount to a reasonable belief or conviction of the judgment, not only of unlawful intimacy, but also oc) ι abitation." In Missouri, it is held that persons, in order to be guilty of living together in open and notorious adultery, as meant by the statute, must reside together in the face of society, as if the conjugal relation subsisted between them, and their illicit intercourse must be habitual and not occasional. State vs. Crowner, 56 Mo., 147. While the opinion disclaims the meaning that the cohabiting and abiding must be for a great length of time, or that

perhaps a short time would not do, still it holds that the parties must live together in a notorious and open manner to the evil example of society. In Mississippi, it is held to consist " in living together in the manner of husband and wife without being lawfully married, in the open assumption of the visible forms of and rights of matrimony without the sanction of the nuptial tie, and without incurring those obligations and responsibilities which attach to the married state." Carroti vs. State, 42 Miss., 335. Occasional illicit intercourse is not sufficient ground for the charge. State vs. Gartrell, 14 Ind., 280 ; Wright vs. State, 5 Blackf., 358 ; State vs. Marvin, 12 Iowa, 499. Without saying that the absence of the word *notorious* from our statute may not constitute a distinction between it and those statutes where it does appear (People vs. Gates, 46 Cal., 53,) still there must be a living together openly, as if the legal relation of husband and wife existed between the parties ; a mere occasional illicit intercourse is not sufficient, but there must be a living or residing together openly, as if the conjugal relation existed. Even if it be assumed that there was sexual intercourse upon the one occasion in 1884, that the testimony of James Cope makes such a thing possible, there is still nothing like adequate proof to make out the offence within the period named in the indictment.

This brings us to a consideration of the question, for what purpose proof of such living or acts and circumstances outside of the period laid in the indictment, may be introduced. In 2 Greenleaf on Evidence, §47, the rule as to adultery is stated as being that where the fact of adultery is alleged to have been committed *within a limited period* of time it is not necessary that the evidence be confined to that period, but proofs of acts anterior to the time alleged may be adduced in explanation of other acts of a like na-

ture within that period, and for such purpose acts so long anterior that they would be barred as distinct offences, may be proved. So prior acts of indecent familiarity have been held admissible to corroborate a witness whose testimony the defendant has attempted to impeach.

We do not understand Wharton as laying down a different doctrine. Wharton's Cr. Law, 1733, 8th Ed.

In Alabama, the rule is thus stated : On a charge involving illicit intercourse during a particular period, evidence of acts anterior or subsequent to that time, which tend to illustrate or explain similar acts within the particular period, although not evidence on which to base a conviction, are admissible in connection with evidence of similar acts during the time laid to prove illicit intercourse as charged. The indictment was for living together in adultery or fornication. Alsobrooks vs. State, 52 Ala., 24. In this case one of the defendants moved to exclude certain testimony of a witness named McKleroy from the jury, "because it related to a period *subsequent* to the finding of the indictment, and no indecent act of familiarity had been proved against them during the period covered by the indictment." * * * "It is settled law of this State," says Justice Judge, " that in a case involving illicit intercourse within a limited period evidence of acts anterior to such period may be introduced in explanation of acts of a similar character within that period although such former acts, if treated as evidence, would be barred by the statute of limitations Such evidence is only admissible, however, when proposed in connection with or subsequently to the introduction of evidence tending to establish an improper intercourse between the parties during the time covered by the indictment, as was done in this case. The testimony of the witness, McKleroy, as to facts occurring subsequent to the indictment, was admissible in evidence on the same principle."

See, also, 20 Ala., 65 ; State vs, Kemp, 67 N. C., 538 ; State vs. Bridgman, 49 Vt., 202.  In Massachusetts, it is held that the mode of alleging an offense adopted in this indictment limits the offence to the precise period stated in the indictment.   Commonwealth vs. Briggs, 11 Metcalf, 573. In Commonwealth vs. Thrasher, 77 Mass., 450, upon the trial of an indictment for adultery evidence of acts of improper familiarity amounting to adultery between the same parties before the time relied on as the time of the commission of the adultery charged, was held inadmissible either in corroboration of other witnesses or to show the disposition of the parties to commit the crime, but this case and that of Commonwealth vs. Horton, which is to the effect that evidence of cohabitation subsequent to the time alleged is not admissible, are regarded as overruled by Thayer vs. Thayer, 101 Mass., 111, in favor of the doctrine that acts of adultery are held admissible, whether occurring before or after the act charged, for the purpose of showing an adulterous disposition.   In Gardner vs. Maderia, 2 Yeates, 446, (A. D. 1799) an action of *crim. con.*, where the injury was stated to have been committed within certain days, it was held that proof of improper freedoms must be first had within the limited time.   It is laid down that though time was no more a material part of the complaint than of a contract, yet that where a trespass is alleged to have been committed within certain days it would be a surprise on the defendant not to confine the proof to the times laid, (citing Buller Ni Pri., 86,) but that after laying a reasonable ground to infer an improper connection between the parties within the limited period the court will be more liberal afterwards in receiving other evidence of indecent conduct at different times tending to show the criminal views and acts of the parties.   There has been no reasonable ground laid down to

infer a living in an open state of adultery from evidence as to the period named in this indictment.

In People vs. Jenness, 5 Mich., 322, after arguing in favor of the admissibility of evidence of a prior act of adultery as tending to prove the one relied on, it is said : " If offered as *proof* of *substantive offences* on which a conviction might be had in the case, it should of *course be excluded*, but as it was not offered for this purpose and could not be allowed to have such effect, we can see no objection to its reception." The cases against Thrasher, Horton and Jenness, from Massachusetts and Michigan, are on charges of adultery or incest, but the charge was laid in each upon a particular day and not within a limited period, as in the one before us, yet they are cited as showing what the rule is in such cases when any particular offence has been fixed upon, although it be true that when the offences named are laid upon one particular day that the prosecuting attorney before introducing evidence might have selected any act of incest or adultery within the statute of limitations applicable to the offence.     People vs. Jenness, p. 327.   Where the charge is of one act of adultery in a single count to which evidence has been adduced, he could not afterwards prove another and ask a conviction of it.     Ibid.

It is a general rule in criminal cases that it is not necessary to prove the offence to have been committed on the day of the month and year specified in the indictment, and Mr. Bishop does not approve of the idea that it does not apply where the time is stated, as in this indictment.     He says : " While by the general doctrine, resting equally in reason and the decisions, as already shown, if a continuing offence is laid as committed as on one day in a case where such form of allegation is adequate the proof of it may be by acts done on any number of other days, the authorities are strangely silent as to how it is when the

time is stated on two days and the period between. According to the Massachusetts rulings there may be proof of it on any or all the days covered by the allegation, but as we have seen proof of it before or after is not admissible." We have found no decisions or text-book (outside of Mr. Bishop's) sustaining the doctrine that where the charge is laid as in the case at bar that it can be maintained by proof of a substantive offence outside of the period limited, or that proof of any acts outside of the period is admissible except for the auxiliary purposes indicated in the foregoing opinion. It is very significant that nowhere is it said that the State can go outside of the limited period for other purposes, and we have shown that it is held that to do so for other purposes is not permissible. Had there been evidence of a living within the limited period in an open state of adultery, it is admitted by counsel for the plaintiff in error that the testimony would have been admissible for these purposes, but as there was none he contends properly, we think, not only was it not admissible, but that there was not evidence to sustain the verdict. The judgment is, consequently, reversed and a new trial granted.