Angus McCorkendale *et al.* v. Mary McCorkendale *et al.,* Appellants.

**Bastards:** RECOGNITION:   *Sufficiency.*   Statements, made by one charged with being the father of a child born out of wedlock, 1  that he had a boy somewhere, that the mother of the boy had been ruined by him, that the mother was pregnant, and that he was going to send her money, did not constitute the general and notorious recognition of the child necessary under the statute, to entitle it to inherit from the father.

**Evidence:**   TRANSACTION WITH DECEDENT.   Under a statute prohibiting the examination of a party to an action in regard to any personal transactions between such persons and a person 2  deceased at the time of the examination, parties defendant in an action by an heir to quiet title to inherited land where the defense is made that the land was inherited by a bastard child of the decedent, will not be allowed to testify to transactions, conversations, and illicit relations with deceased.

SAME.   Under a statute prohibiting a party from giving testi- 3  mony of communications with a person deceased before the commencement of the examination, letter of the deceased written to a party are inadmissible.

*Appeal from Sac District Court.*—Hon. S. M. Elwood, Judge.

THURSDAY, May 10, 1900.

Action in equity to quiet the title to land.    There was a trial upon the merits, and a decree for the plaintiffs. Defendants appeal.—*Affirmed.*

*M. W. Beach* for appellants.

*W. A. Helsell* for appellees.

Sherwin, J.—On the seventeenth day of May, 1896, Neil McCorkendale died intestate, seised in fee of the land in controversy.    He left surviving him his widow, Mary McCorkendale, one of the defendants herein.    No children were born to Neil and Mary McCorkendale.    The parents of the deceased died before the seventeenth day of May, 1896.    The plaintiffs are his brothers and sisters, and brought this action to quiet their title to the undivided one-half of the land in question; alleging that one Janet Armour, and her son, Lawrence Armour, were in possession of a part of the land, claiming an interest therein adverse to the plaintiffs.    Each of the defendants, Mary McCorkendale, Janet Armour, and Lawrence Armour, filed a separate answer, all alleging that Lawrence Armour is the son of Janet Armour and the illegitimate son of Neil McCorkendale, and alleging further that Neil McCorkendale during his lifetime had recognized him as his child, in writing and otherwise, and that such recognition was general and notorious.    Based upon the facts so plead, Lawrence Armour claims to inherit two-thirds of the estate of the deceased.    Janet Armour and Mary McCorkendale, the widow of the deceased, are sisters. They were also first cousins of Neil McCorkendale.    Janet lived with deceased and her sister in Sac county from June, 1883, until about April 23, 1885.    It is proven that Lawrence Armour was born in Joilet, Ill., April 28, 1885, and lived there with his mother eight years, and that she, with the child, thereafter moved to Minneapolis, Minn.    It is

conceded that Neil McCorkendale never saw Janet Armour after she left Sac county, in 1885, and that he never saw Lawrence Armour, and that neither the mother nor the child was ever in this state after his birth until subsequent to the death of Neil McCorkendale. It is proven beyond question that Janet Armour is the mother of the defendant Lawrence Armour, and that he was born out of wedlock. There is also some competent evidence in the record which tends to show that Neil McCorkendale was his father. The questions, however, which we have to determine, are whether Neil McCorkendale recognzied Lawrence Armour as his son, and, if he did, whether such recognition was the general and notorious recognition required by the statute, or whether the recognition was in writing, as claimed. Lexicographers say the word "general" means "common to many or the majority; extensive though not universal,"—and that "notorious" means "generally or commonly known, acknowledged, or spoken of." That it was quite generally understood in the community where Mr. Mc-Corkendale lived that Janet Armour had given birth to a child, and that he was the father, we think is abundantly proved by the record. But the record falls far short of proving that he recognized the child as his. It is shown that he partially admitted to one of his acquaintances that he had a boy somewhere. To another he stated he had ruined Janet Armour, and that she was pregnant; to a third, that Janet had "played the devil," and "was going to have a young one," and "that he was going to send her money." It is shown that the community where deceased lived at this time was a thickly-settled one, and it cannot be said that these statements, given their broadest meaning, constitute the general and notorious recognition required by the statute. The written recognition relied upon consists of letters claimed to have been written to Janet Armour by deceased, only one of which was produced upon the trial. This is dated at Odebolt, Iowa, April 23, 1896, and begins, "Dear

Janet," and purports to have been signed by Neil McCork-
endale, and witnesses were called who testified that the
signature thereto was genuine.   The letter contains this
language:  "I am thinking on you every day, and it is in
my mind all the time to have you so far away alone among
strangers, but I hope the boy will be good to you when he
gets older.  If he takes after me, he will.  *  *  *  I think,
when the boy will be old enough, it will be better for you
both to be on a farm.  *  *  *  You wanted to know if
John showed me the boy's picture.  He never mentioned
it to me.  If he got it, I never heard any one say, but I
have the picture here before me, and I think it very
pretty.  He looks like yourself more than like me."  Be-
low the signature to the letter was written in the Gaelic
language  a  sentence  which,  translated  into  English,
means,  "You  are  my  best  love  forever;"  and,  in
English:  "Write  as  soon  as  you  can.  Goodby, with
love  to  both,  and  kiss  for  my  boy."  In  connection
with this letter an envelope was offered in evidence, ad-
dressed to Miss Janet Armour, Minneapolis, Minn., which
was postmarked: "Odebolt, Apr. 7, p. m., 1896, Iowa."  It
is conceded by appellants that without explanation the above
letter would be to some extent, at least, unintelligible.  We
fully agree with this conclusion, and unless there is legal
evidence identifying the letter itself, and proving that it
was received by Janet Armour, and explaining its mean-
ing, it must be held not to furnish written recognition by
Neil McCorkendale of Lawrence Armour as his son.  The
necessary evidence to make this letter intelligible and mate-
rial, and to prove that it was received by Janet Armour,
was offered in the testimony of Janet herself.  Her testi-
mony as to sexual intercourse with Neil McCorken-
dale was also offered.  To all of this testimony the
objection was made that her testimony as to personal
transactions or communications between herself and the de-
ceased was incompetent.  The statute says that "no party

to any action or proceeding shall be examined as a witness in regard to any personal transactions or communications between such witness and a person at the commencement of such examination deceased," etc.  Janet Armour was a competent witness as to many things that she did testify to, and when she was interrogated as to any matter within the inhibition of the statute the objection was promptly made.  We think it was sufficient in form and timely.  The witness was a party to the suit, and could not testify as to personal transactions or communications between herself and Neil McCorkendale.  *Williams v. Barrett,* 52 Iowa, 641; *Burton v. Baldwin,* 61 Iowa, 283.  That the letters she claimed to have received from him are within the prohibition of the statute is well settled, and it would seem hardly necessary to cite authorities, so plain is the language of the statute itself, which is broad enough to, and must be held to, embrace every communication, whether written or oral, direct or indirect.  *Dysart v. Furrow,* 90 Iowa, 59; *Martin v. Shannon,* 92 Iowa, 375; *Cole v. Marsh,* 92 Iowa, 379; *Kroh v. Heins,* 48 Neb. 691 (67 N. W. Rep. 771); *Van Vechten v. Van Vechten,* 65 Hun, 215 (20 N. Y. Supp. 140); *Holcomb v. Holcomb,* 95 N. Y. 316; *Holliday v. McKinne,* 22 Fla. 153; *Sabre v. Smith,* 62 N. H. 663.  What has been said with reference to the testimony of Janet Armour applies also to that of Mary McCorkendale, the widow, who is also a party, and attempted to testify, over the objection of plaintiffs, as to statements of deceased regarding this boy.

Mary McCorkendale, in a cross petition, claimed that certain of this land had been deeded to her by her husband some time before his death.  Reference only is made to this in argument.  The trial court denied her the relief prayed, and we think rightly so.  The other questions raised by appellees we need not discuss.  The decree is AFFIRMED.