### LEONARD *v.* STATE.

### Opinion delivered February 3, 1913.

1. CRIMINAL LAW—TRIAL—ARGUMENT OF COUNSEL.—When it becomes necessary for the prosecuting attorney to criticize the conduct of the accused, he should do so in language justified by the evidence, and should make his remarks impersonal and should describe or characterize the acts of defendant which the evidence tends to prove rather than to engage in personal criticism of the defendant himself. (Page 450.)

2. TRIAL—ARGUMENT OF COUNSEL.—When the evidence tended strongly to prove that the defendant was guilty of conduct which rendered him a "vile character" and a "whore-monger," argument of the prosecuting attorney to the jury that such was the character of the defendant, is not prejudicial. (Page 450.)

3. CRIMINAL LAW—EVIDENCE—WITNESS.—Where defendant is charged with illegal cohabitation with a certain woman, it is relevant on the issue of the credibility of the witness to ask defendant in cross examination "if, on one occasion, you and another fellow didn't just trade wives?" And when defendant answered in the negative, his rights were not prejudiced. (Page 450.)

Appeal from Independence Circuit Court; *Eugene Lankford,* Judge on exchange; affirmed.

STATEMENT BY THE COURT.

On November 4, 1911, Fayette Leonard was indicted in Independence County for the crime of illegal cohabitation. He was convicted and fined in the sum of fifty dollars, and appeals to this court.

Pearl Gilbert, the girl with whom appellant was alleged to have lived in illegal cohabitation, testified that she knew Leonard in 1910 and 1911. She stayed at the house with him and was not his wife.

Witness DeCamp was the marshal of the town of Batesville. He knew Leonard in 1911. Leonard lived in the back of his (Leonard's) store. He saw Pearl Gilbert at Leonard's place of business very frequently. He also saw two or three other women there. Pearl Gilbert was usually in the kitchen, in the back room; sometimes in the front in the store, part of the time waiting on customers.

Witness J. W. Cypert testified that women lived with Leonard off and on in 1911. Pearl Gilbert lived there; "they lived there together." Once when he went in there they were in the back room sitting on the bed. "They were scuffling sort of with their hands." The best he could see Leonard was trying to get his hands up under her dress; he had her dress up to about her knees; it was in the day time.

Witness Tally testified that in 1911 Pearl Gilbert was living or staying there at Fayette Leonard's.

Mrs. Birges testified that one day in 1911 she was at Leonard's store and in a few minutes Leonard came out of the bed room back of his store rubbing his eyes and in a little bit she saw Pearl Gilbert come out of the bed room and run around in the kitchen. She didn't know that they were in bed together.

Retha Gilbert, the mother of Pearl, testified that Pearl lived with Leonard before she was married. They lived in the house together. They were in the same bed together before witness left there. He occupied the bed with her at times. Pearl was not quite fifteen years old when she first commenced having improper relations with

Leonard and witness tried to stop it and took Pearl away from there two or three times.

The appellant, in his testimony, denied that he ever had intercourse with Pearl Gilbert, and stated that he had paid her a salary of $2 a week all the time she was at his house. He had been married three times, and was then divorced. Pearl Gilbert also denied that there was any illicit intercourse between her and Leonard.

The prosecuting attorney, in arguing the case before the jury, said: "The defendant is a vile character." The defendant objected to the remarks and requested the court to require the prosecuting attorney to desist and reprimand him, which request was refused and exceptions were saved. The prosecuting attorney further remarked: "The defendant is a whore-monger." Appellant objected to the remark, the court overruled the objection and the defendant duly saved his exceptions. Defendant also asked the court to instruct the jury to disregard the statements of the prosecuting attorney to the effect that the defendant "is a vile character" and a "whoremonger" but the court refused to so instruct and appellant duly excepted.

*Ira J. Mack*, for appellant.

1. The testimony does not show that appellant and Pearl Gilbert lived together with reference to bed and board in the manner which characterizes the intercourse of husband and wife. The court should, therefore, have directed a verdict for the defendant. 36 Ark. 39; 60 Ark. 261; 37 Ark. 215.

2. There was no testimony to justify the prosecuting attorney in arguing to the jury that the defendant was a "vile character" or that he was a "whoremonger." Such argument was improper and prejudicial. 72 Ark. 461; 65 Ark. 389; 76 Ark. 430; 82 Ark. 432; 95 Ark. 362; 60 Ark. 76; 139 S. W. 287; 58 Ark. 367; 69 Ark. 648; 65 Ark. 475. See also 70 Am. St. Rep. 495.

*William L. Moose*, Attorney General, and *Jno. P. Streepey*, Assistant, for appellee.

1.   The facts and circumstances in proof are amply sufficient to sustain the charge and to support the jury's verdict.   98 Ark. 586; 105 Ark. 140; 39 *Id.* 125.

2.   The evidence justified the prosecuting attorney's argument.   A prosecuting attorney is allowed to argue those things which may reasonably be inferred from the evidence.   33 L. R. A. (Vt.), 416.   See also 94 Ark. 514; *Id.* 548; 100 Ark. 225.

WOOD, J., (after stating the facts).   The appellant and Pearl Gilbert sustained to each other a relation in the house like that of husband and wife.   She lived in the house with him, performing the ordinary duties of washing, cooking and housekeeping like a wife would in many cases perform.   She slept in the same room with him, and necessarily must have eaten at the same table. Appellant was divorced and had no wife in the house with him.   The evidence, we think, fully warranted the jury in finding that the offense of illegal cohabitation, as defined by the statute and construed by the court, was committed by appellant.   Kirby's Digest, section 1810; *Lyerly* v. *State,* 36 Ark. 39; *Taylor* v. *State,* 36 Ark. 84; *Bush* v. *State,* 37 Ark. 215; *Turney* v. *State,* 60 Ark. 261.

It is never in good taste for a prosecuting officer to personate the defendant on trial.   When the prosecuting attorney does this, he generally subjects himself to the criticism of having indulged in personal villification of one who is in the custody of the law and helpless to resent or to defend himself against what he may consider or possibly know to be unwarranted and unjust personal insult and abuse from one who is for the time being clothed with official authority.   But it may, and often does, become necessary for the prosecuting attorney to properly criticise the acts and conduct of the accused in language shown to be justified by the evidence.   When such is the case the prosecuting attorney should always make his remarks impersonal and should describe or characterize the acts which the evidence tends to prove rather than to engage in personal criticism of the defendant himself.

But we are of the opinion that the remarks of the prosecuting attorney, in this case, while of a personal character, were not prejudicial for the reason that the evidence tended strongly to prove that the accused was guilty of conduct which, in fact, rendered him a vile character and a whore-monger. The testimony on behalf of the State tended to prove that he commenced having sexual intercourse with the young girl, Pearl Gilbert, before she was fifteen years of age, which, under the law, was carnal abuse and a penitentiary offense; and that he had other women frequently staying there in the house with him. So, the testimony altogether justified the characterization of his conduct as that of a vile character and a whore-monger, and under the circumstances it was not prejudicial.

The prosecuting attorney was permitted, over the objection of defendant, to ask defendant, on cross examination, "if, on one occasion, you and another fellow didn't just trade wives?" The defendant answered no, that he "never heard of that before." The question was not improper. It was relevant on the issue of the credibility of the witness, and, besides, being answered in the negative, could not have prejudiced the rights of the appellant.

The judgment is affirmed.