W. J. GRICE AND MATTIE HODGE, *Plaintiffs in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

## Opinion filed May 25, 1918.

1. To constitute the crime of living in an open state of adultery, there must be a living together openly as if the legal relation of husband and wife existed between the parties; a mere occasional illicit intercourse is not sufficient, but there must be a living or residing together openly as if the conjugal relation existed, coupled with acts of sexual intercourse.

2. The mere living together of two persons of opposite sexes, either of whom is married to a third person, does not constitute the offense of living in an open state of adultery.

3. The offense of living in an open state of adultery, may be established by circumstantial evidence, but acts of sexual intercourse must be clearly established by circumstances which raise the unavoidable presumption of their commission.

Writ of Error to Circuit Court for St. Lucie County, E. B. Donnell, Judge.

Judgment reversed.

*F. L. Hemmings* and *Otis R. Parker,* for Plaintiffs in Error;

*Van C. Swearingen,* Attorney General, and *C. O. Andrews,* Assistant, for the State.

BROWNE, C. J.—Mattie Hodge and W. J. Grice were convicted in the Circuit Court of St. Lucie County of living in an open state of adultery, and seek reversal here on writ of error.

The assignments of error all raise the same question,
—the sufficiency of the evidence to support the verdict.

A deputy sheriff and two other witnesses testified that
they went at about midnight to a house owned by the
father of Mattie Hodge, and found the defendants and
a young girl there. The house had but one bedroom
14x16 in which were two beds and other furniture.
When the inmates were awakened a light was struck
in the house and Grice told the sheriff to wait a little
as he had to put on some clothes, and in a few moments
he opened the door. He had on his trousers and was in
his bare feet. Mattie Hodge was in bed with her foster-
sister, her first cousin, a girl of thirteen years of age.
The house belonged to E. M. Baker, the father of Mattie
Hodge, and was built on a place that he had home-
steaded. There was another house on the place about
seventy-five feet away, in which there was a bed, where
Grice usually slept when Baker's family were at home.
Baker testified that he had been living about three years
on the place, that he and his wife were living there when
Grice came to live with them; that as he was away part
of the time and wanted somebody to be on the place
he let Grice live with them; Grice paid him $4.00 a week
board while there, and slept in the little house just off
from the main house "about all the time," but some-
times he slept in the main house with the family, and
when he did Baker and Grice occupied one bed; that
besides himself and wife, his son-in-law Bob Davis and
his wife stayed in the house while he was working down
at the canal; when Mr. and Mrs. Davis stayed in the
house Davis and Grice occupied one bed and Mattie and
Mrs. Davis and their foster-sister occupied the other.
Baker's testimony is corroborated by his wife, his son
and daughter and her husband, and the girl Lula King.

The acts that were testified to possibly for the purpose of showing the conjugal relation existing between the defendants, consisted of riding together occasionably in a Ford automobile, and walking out together, and once in Fort Pierce riding on the same merryy-go-round; one witness saw him one Saturday evening with Mattie Hodge and Lula King, and he left them and went in a store and bought some groceries; another witness who kept a store in Vero thus details some doings of Grice and Mattie, as part of the circumstances which tended to prove the illicit relations existing between them. "I am in the grocery business. I have been in the grocery business nine or ten years. I have had business dealings in the last year with both of these defendants. The only thing I remember selling W. J. Grice—I have sold him a number of times I know, but the only thing I remember of is one time I sold him twenty-five cents worth of chicken feed. He bought the chicken feed and went out to the depot platform and Miss Hodge, Mattie Hodge, was out there and they had a coop of chickens out on the platform ready to ship, and he took the feed out there and they fed the chickens. It was on Thursday afternoon and I was at the house, the store wasn't open, he came to the house after me and I went to the store and sold him the chicken feed, and that's the only thing I can remember of selling him, only I know I have sold him other stuff. He and Mattie fed the chickens together. They talked to each other while they were feeding them. I don't remember what they said."

Much of the testimony introduced for the purpose of establishing the guilt of the defendants, by circumstantial evidence, was as immaterial as this.

There is no testimony that Mattie Hodge cooked for

Grice, mended his clothes, did his washing or any of the things that a wife in their circumstances is supposed to do for her husband. None of the witnesses testified to any acts of immorality, but on the contrary the deputy sheriff and the two witnesses who went to the house with him, testified that they never say any immoral acts or relations between the defendants.

It is uncontroverted that the only occasion when the defendants were seen in this house when Mattie's father or married sister and her husband were not there, her foster-sister, a thirteen year old girl, was with them. There is not a particle of testimony of any acts of affection between these parties, and no evidence of immorality between Grice and Mattie Hodge other than the fact that they were found in the same room in the night time, but as Lula King was in the room also, and in the bed with Mattie, whatever of immorality this freedom of intercourse showed, affected Mattie and Lula alike. Mr. Baker, Mattie's father, also testified: "I have never seen them acting in an affectionate way toward each other. I raised all my kids straight and everybody that knows me knows I have. Sometimes there were a good many of us sleeping in that one room at a time—when they were all there. Sometimes my son-in-law and his wife would be there and we would all sleep in the same room. I never thought it was wrong for us all to sleep in the same room. I have seen lots of it done."

Walter Lawhorn, one of these parties, testified that the sheriff sent him out on another occasion to see if there was anyone there besides Mattie and Grice and that he found Mr. and Mrs. Davis, and "Mr. Grice was sawing on a fiddle." This witness also testified that Grice stayed there "a pretty good while at times and

sometimes he would be off and gone for a few weeks. That was his headquarters. I have never seen any relations between Mr. Grice and Mattie Hodge that was immoral or wrong."

In the case of Brevaldo v. State, 21 Fla. 789, this court said: "Still there must be a living together openly as if the legal relation of husband and wife existed between the parties; a mere occasional illicit intercourse is not sufficient, but there must be a living or residing together openly as if the conjugal relation existed."

In the instant case there is no testimony of a single instance of illicit intercourse between these parties. It is not necessary to prove the offense of which these defendants were convicted, by direct evidence, because from the very nature of the case it must generally be proven by circumstances which raise the presumption of cohabitation and unlawful intimacy, but as was said in Searles v. People, 13 Ill. 597, cited approvingly by this court in the case of Brevaldo v. State, *supra*: "But this presumption must be something more than a mere supposition. It must amount to a reasonable belief or conviction of the judgment, not only of the unlawful intimacy, but also of cohabitation."

The statute of Florida which makes the living in an open state of adultery a punishable offense contains no definition of the crime, and we must resort to the established definitions sanctioned by the authorities which seem to include all cases of incontinence where either one of the parties is married to a third person. The mere living together of two persons of opposite sexes, either of whom is married to a third person, does not constitute the offense of living in an open state of adultery, but there must be acts of sexual intercourse between them to constitute adultery is the gravamen of

the offense. This must be clearly established, and if direct evidence is unobtainable, then by circumstances which raise the unavoidable presumption of such acts.

We think the evidence in this case is insufficient to support the verdict, and the judgment is reversed.

TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.