[FILE No. Cr. 161.]

STATE OF NORTH DAKOTA, Respondent, v. LOUIS HOFFMAN and Bertha Brady, Appellants.

(282 N. W. 407.)

Opinion filed November 10, 1938.

*Theo. B. Elton* and *Bangs, Hamilton, & Bangs,* for appellants.
*Alvin C. Strutz,* Attorney General, and *W. B. Arnold,* State's Attorney, for respondent.

Burr, J.   The defendants were prosecuted jointly for the crime of unlawful cohabitation "on July 16, 1936, and continuously thereafter," the information being based upon the provisions of § 9581 of the Compiled Laws, which provides: "Every person who lives openly and notoriously and cohabits as husband or wife with a person of the opposite sex without being married to such person, is guilty of a misdemeanor. . . ."

The trial was had January 1838 and the jury returned a verdict of guilty.   Judgment was entered thereon, and from the order of the court denying a motion for new trial the defendants appeal.

The appeal is based solely upon the claim "that there is not sufficient evidence to sustain the verdict."

Defendants insist the record fails to show the defendants lived openly and notoriously together as husband and wife; fails to show that

they cohabited as husband and wife; and fails to show they were not married to each other.

. Much is made of the meaning of the terms "openly" and "notoriously." There is nothing esoteric in these words. The term "openly" means merely living together the same as a husband and wife would live together. It means undisguised and unconcealed, as opposed to hidden and secret. See Com. v. Wardell, 128 Mass. 52, 53, 35 Am. Rep. 357. There is no set rule for this. Some couples are quiet in their habits and demeanor and make little social stir; but their neighbors known they are living in the same house and acting as husband and wife. The term "notoriously," in the sense it is used in the statute, does not necessarily have an opprobrious meaning. The primary meaning of notorious is "generally known or acknowledged." See McCorkendale v. McCorkendale, 111 Iowa, 314, 82 N. W. 754. It means generally known in the community where they live, a matter of general or common knowledge, living and acting in such a way that people who would notice them would be justified in concluding that they were acting as if they were married to each other. The living together must be open and notorious in such senses. Copeland v. State, 10 Okla. Crim. Rep. 1, 133 P. 258; State v. Cassida, 67 Kan. 171, 72 P. 522. It is not necessary that the living together should be more open and notorious than the living together of a married couple, but it should partake of the same quality—living and acting as husband and wife would do. See Leonard v. State, 106 Ark. 449, 153 S. W. 590, 591; Grice v. State, 75 Fla. 751, 78 So. 984.

"Open" has no reference to place nor number of people who know. State v. Juneau, 88 Wis. 180, 59 N. W. 580, 581, 24 L.R.A. 857, 43 Am. St. Rep. 877. It is the same living together and cohabitation as if they were married. See Robinson v. United States (D. C.) 33 F. (2d) 545, 547, and Burns v. State, 17 Okla. Crim. Rep. 26, 182 P. 738, where the terms are exhaustively defined.

To cohabit as husband and wife merely means to have intercourse with each other, the same as husband and wife. As said in State v. Gieseke, 125 Minn. 497, 147 N. W. 663:

"If a man and an unmarried woman dwell together, and, while so dwelling together, make a practice of indulging in carnal intercourse, they cohabit within the meaning of § 8703, Gen. Stat. 1913,

(a section which declares, 'whenever any man and a single woman cohabit with each other, both shall be guilty of fornication') and are guilty of the offense therein defined, although they may ostensibly dwell and associate together for some lawful purpose, and may conceal, or · attempt to conceal, their immoral relations."

See Tribbey v. State, 189 Ind. 205, 126 N. E. 481, 482.

If a man and woman live together in the same dwelling place, the same as husband and wife live together, so that from general knowledge they conduct themselves as husband and wife and cohabit as husband and wife, then they are living "openly and notoriously" and are "cohabiting" as husband and wife, and if at that time they are not married to each other, then they are guilty of unlawful cohabitation.

The facts in this case are simple. The defendants were partners in the business of a second-hand store. The extent of their separate interests was not shown, nor is it material. They lived alone in the rear of the store, in a place set apart for living quarters, and had so lived for a period of three years. At first there were two bedrooms, each supplied with a bed, but later, on remodeling, there was but one bedroom and but one bed. Here the parties lived, kept house, cooked their meals, ate at the same table, and entertained guests. They used the same closet for their wearing apparel.

That they had sexual intercourse with each other is beyond dispute. Witnesses discovered them occupying the same bed at the same time. During this period the woman gave birth to twins, who died, and later she gave birth to a boy. As to these children, the defendant Hoffman not only admitted, but claimed and seemed proud of the fact, that he was the father. He employed the doctors to take care of her during her confinement. He sent her to the hospital, the same as a man would send his wife, he paid the hospital bill, celebrated the birth of the child, had religious rites performed, and after a reasonable time in the hospital he brought her back to his home. He invited neighbors in to see the baby and these neighbors, men and women, were entertained by the two of them, the same as a husband and wife would entertain visitors. At various times witnesses found defendant Brady preparing the meals. At one time she suffered from a "fit," whereupon Hoffman said that he would take her home and he took her to this place of residence.

In King v. United States (C. C. A. 4th) 17 F. (2d) 61, 62, the birth of three illegitimate children to a widow was held to be conclusive evidence that she was living in "open and notorious illicit cohabitation" with another; and in the case at bar it is shown defendant Hoffman admitted the paternity of the twins born to defendant Brady and of the third child born later. Clearly they were openly and notoriously living together and cohabiting as husband and wife.

It is earnestly contended that there is no proof they were not married to each other. The state must prove this nonmarriage, but such fact may be established by circumstantial evidence.

At the trial of the case each defendant was represented by an attorney. The attorney for the defendant Brady called her "Bertha Brady," not "Mrs. Hoffman," and notified the court that he was appearing for Bertha Brady. On one occasion at least he called her "Mrs." Brady, and the other defendant was at all times denominated "Hoffman." The defendants offered no testimony, and therefore the conviction depends solely upon the evidence adduced by the state.

The record shows that Hoffman had been married and that his wife was committed to the hospital for the insane for treatment. A police woman from the city of Grand Forks testified that Hoffman, when arrested on this charge in May 1937, stated "his wife had been in the hospital and would have been there five years by sometime in June or July. . . ." While the wife was in the hospital for the insane the defendant commenced an action for divorce and "in the early fall" of 1937 the County Judge of Grand Forks County was appointed in that case guardian ad litem for the wife. At the trial he testified the wife was still living and he knew of no divorce having been granted. It may be that the state could have shown specifically that no decree of divorce had been rendered, but the record shows that the defendants were living together as husband and wife for a period of three years or so prior to the time charged in the information, to-wit, "July 1936 and continuously thereafter." The preliminary hearing was held in May 1937—before the county judge was appointed guardian ad litem for the wife in the divorce proceedings. He was appointed guardian "in the early fall" of 1937 and the defendants were convicted in January 1938. It is therefore quite clear there could have been no divorce granted at the time of the arrest, and at the time of trial the testimony

to show that they were not husband and wife was sufficient in quality on that point to go to the jury. By finding the defendants guilty the jury found they were not married to each other, and the verdict is binding. The judgment of conviction is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE, SATHRE, and MORRIS, JJ., concur.