## 1207. WINKLES *v.* THE STATE.

1. To constitute the offense of "living together in a state of adultery or fornication, or of adultery and fornication," the evidence should show habitual illicit intercourse between the man and the woman. Proof of merely one act, or occasional acts, of incontinence is not sufficient. Therefore it was error, on the trial of a man charged with the offense ·of living with a named female, in a state of adultery and fornication, to instruct the jury, in effect, that proof of the commission by the defendant of the "offense of adultery and fornication" with the named woman would authorize a conviction.

2. The evidence in this case, strongly weighed against the defendant, is sufficient only to raise a suspicion of his guilt of the offense of "adultery and fornication," and is wholly insufficient to support the verdict of illicit cohabitation.

Indictment for adultery and fornication, from Haralson superior court—Judge Edwards. April 15, 1908.

Argued June 30,—Decided July 25, 1908.

*Janes & Hutchens, J. S. Edwards,* for plaintiff in error.

*W. K. Fielder, solicitor-general, Griffith & Mathews,* contra.

HILL, C. J. The plaintiff in error was convicted on an indictment for the offense of "living together in a state of adultery and fornication" with a named unmarried female, he being a married man. His motion for a new trial being overruled, the case came to this court.

The defendant was a married man, living on his farm with his wife and children, two miles distant from the place where the woman designated in the indictment and in the proof lived. She lived with her mother, sister, and brother-in-law. She had never been married, but had a child, twelve or thirteen years of age. The place on which she lived was owned by the defendant, and was rented by him to the brother-in-law of the woman in the case. He frequently visited this house, and was seen in conversation with the members of the family, including the brother-in-law, and on several occasions was seen talking to this woman. These visits were generally made on Sundays, when the defendant, on his way from church, would walk with the brother-in-law and stop at the house and sit on the porch, and talk to members of the family. On one occasion he spent the night at this house; but the witness who testified to this fact also testified positively that he did not sleep in the room occupied by the woman, but did sleep in another room of the house. This witness also testified that on one occasion, while he himself was present at the house, he knew that the defendant was in a room with the woman for a short time, although he did not see them there together. No improper conduct was shown to have taken place between them, nor did the evidence show any situation indicating improper conduct, or any circumstances of suspicion between them, for two years prior to the date of the indictment. It was shown that the defendant, on several occasions, repaired the house, and specially repaired and fitted up the room in the house occupied by the woman in question. There was evidence that her bastard child, twelve or thirteen years of age, went by his name and was claimed and treated by him as his son. Some eight

or ten years prior to the indictment, he and the woman were seen in a store at Cedartown, buying shoes (which the witness testified were shoes for females) and calico, and they rode to Cedartown in a buggy together. Some of the witnesses swore that the woman had a general reputation for immorality, and that the women of the neighborhood did not visit her. It was also shown that the witnesses who testified against the defendant had had litigation with him, and were not friendly towards him.

The defendant introduced no evidence, denied his guilt, and defended the woman's character. He stated, that he was interested in the property where she lived, because it belonged to him, and that he did on several occasions visit the family and go to church with them, and spend the day on returning from church, but that he had never been anywhere with this woman alone. He denied that the child of the woman was his offspring, or that he had ever claimed it as such, and stated that the testimony of the witnesses against him and her was dictated by their feeling of enmity to him, growing out of litigation which he had had with them.

1. We have examined the special assignments of error, and conclude that they show no material or prejudicial error, except in the following excerpt from the charge of the court: "Indirect or circumstantial evidence is that which only tends to establish the issue by proof of various facts sustaining by their consistency the hypothesis claimed. The hypothesis claimed in this case is that within two years before the finding of this bill of indictment, in this county, the defendant, S. J. Winkles, committed, with Lizzie Clinton, the offense of adultery and fornication." The indictment in this case charged the defendant and the unmarried woman with "living together in a state of adultery and fornication." This offense necessarily includes the act of adultery and fornication, but it is not established by a single illicit act. The code makes the offense of living together in a state of adultery and fornication a different offense from an act of adultery and fornication. Penal Code, §381. And a single or occasional act of criminal intercourse does not constitute the offense of living together or cohabitating in adultery and fornication. Cohabitation or living together in this illicit and unlawful state is essential. Many authorities hold that, under statutes substantially in the same language as section 381 of the Penal Code, it is necessary to prove that

the parties lived together in the illicit relation in the same house, the object of such statutes being to prohibit the public scandal or disgrace of the living together of persons of opposite sexes notoriously in illicit intimacy, which outrages public decency and has a demoralizing and debasing influence upon society. Other authorities hold that the parties need not occupy the same dwelling, if there is a continuation of the illicit intercourse for a sufficient length of time to satisfy the jury that the relation or state existed. Bish. Stat. Crimes, § 697; Bodiford *v.* State, 86 Ala. 67 (11 Am. St. R. 20, 5 So. 559); Morrill *v.* State, 5 Tex. App. 447. In other words, habitual illicit intercourse between a man and a woman, though living apart, will constitute the offense, but how long and to what extent such habitual illicit intercourse must be continued is not settled as a matter of law, but must in every case depend upon the special facts and be determined by the jury. We can imagine cases in which the offense of living together in a state of adultery and fornication could exist and be shown, without proof of any act of incontinence, or where proof of one act, or of an occasional act, of adulterous intercourse, in connection with other circumstances, would be sufficient to prove the offense of living together in such immoral relation; but there is no authority which holds that one act, or even occasional acts, of adultery and fornication would be sufficient to show, without more, the offense of cohabiting or living together in violation of the penal statute. As is said by the Supreme Court in *Lawson* v. *State,* 116 *Ga.* 571, where the indictment charges the defendant with living in adultery with a named person it is "necessary for other facts to be proved besides an act of adultery, to warrant the conviction of the defendant." And in *McLeland* v. *State,* 25 *Ga.* 477, where the defendant was indicted for living in a state of adultery and fornication, it was held that it was erroneous for the court to instruct the jury that if they believed that one or two or more acts necessary to constitute the offense charged in the bill of indictment were proved, they should find the defendant guilty. Therefore, the "hypothesis claimed in this case by the State" was not the commission of the offense of "adultery and fornication" between the defendant and the named female, but was something more, to wit, that the man and the woman named had "lived together in a state of adultery and fornication."

2. The learned counsel for the State admits that the evidence against the plaintiff in error is "not very strong and conclusive," but contends that "when viewed in the light of all the surrounding circumstances, as the jury viewed it, it is sufficient to sustain a conviction, and the verdict which was approved by the trial judge ought to stand." The evidence is entirely circumstantial, and we fully concur in the opinion of the solicitor-general that it is neither strong nor conclusive. Indeed, we are sure that it has neither sufficient strength nor conclusiveness to support the verdict. When weighed most strongly against the defendant it only raises a suspicion of his guilt of the act of adultery and fornication, and wholly fails to show any fact or circumstance tending to prove the offense of which he was convicted. This court is not illumined by any ray from "the light of all the surrounding circumstances," from which counsel for the State justifies the verdict. If any such light existed, it does not shine forth from the brief of evidence, and must have existed solely in the surrounding circumstances. The gossip of what Charles Reade calls the "prurient prudes" in the neighborhood, and the ready accusation of personal enemies, are not sufficient to meet the requirements either of law or justice. These demand evidence of guilt, exclusive of every reasonable hypothesis of innocence; and it certainly can not be said that this standard of conclusiveness is reached by the evidence in this case.

We therefore conclude that the conviction of the plaintiff in error of the offense charged in the indictment is wholly without any evidence to support it, and that the judgment refusing him a new trial was erroneous.                    *Judgment reversed.*