### THOMAS v. UNITED STATES et al.

(District Court, D. Massachusetts. August 26, 1926.)

No. 1990.

1. Army and navy ⊜〜51½, New, vol. 12A Key-No. Series.

"Illicit cohabitation," as affecting rights of beneficiary of war risk insurance certificate, has narrower meaning than "illicit intercourse."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Illicit Cohabitation.]

2. Army and navy ⊜〜51½, New, vol. 12A Key-No. Series—Evidence held to show "open and notorious illicit cohabitation" within statute affecting rights of beneficiary of war risk insurance certificate.

Proof of irregular relations between beneficiary of war risk insurance certificate and man whom she acknowledged as her husband, when they were not as yet married, though a child had been born to them, *held* sufficient to show "open and notorious illicit cohabitation," within statute affecting rights of beneficiary of war risk insurance certificate.

At Law. Action by Eva May Thomas against the United States and another. Decree for defendants.

Edward A. Ryan, of Worcester, Mass., for plaintiff.

Edwin K. McPeck, U. S. Atty., of Adams, Mass. (Marcus Morton, Jr., Asst. U. S. Atty., of Boston, Mass., of counsel), for defendants.

MORTON, District Judge. This is a suit to establish the rights of the plaintiff in the war risk insurance of one Leroy W. Harrington. It was heard in open court. The facts are as follows:

The plaintiff married Harrington on March 3, 1914, and they lived together as husband and wife until 1916. The insurance in question was issued while he was in the Army, and he died in the service in February, 1919. The plaintiff's interest in the insurance as his widow was canceled by the Veterans' Bureau on April 30, 1923, upon the ground that she was living in "open and notorious illicit cohabitation" with Edward S. Thomas, whom she has since married. Whether she did so live is the issue upon which the case turns.

She came to Boston from Worcester in July, 1921, and went to live with her sister, Mrs. Kelly, now Mrs. Phillips. She resided there several weeks, during which Thomas called on her pretty regularly in a proper way. The plaintiff then hired an apartment on Harrison avenue, moving in about August 1, 1921. She took this apartment under her correct name, Mrs. Eva Harrington, and lived in it for about a year. During this interval Thomas called on her frequently, but not in such a way as to excite comment or scandal. In June, 1922, while she was still living there, a child was born to her, of which Thomas is admittedly the father. The physicians who attended her at that time knew her as Mrs. Thomas. The child was christened Edward Thomas, Jr., and Thomas attended the christening service. It is a fair inference that for some time before that event she, while not directly holding herself out as Thomas' wife, had let it be understood in the neighborhood that Thomas was her husband. She told her sister so. Thomas' home was with his mother, brother, and sister in Charlestown. He worked as an engineer. It does not appear that he ever resided with the plaintiff at the apartment on Harrison avenue. He says he never spent a night there, and there is no evidence to contradict him.

About two months after the birth of the child—i. e., about August 1, 1922—the plaintiff removed to Blue Hill avenue, Boston, where she took another apartment, this time under the name of Thomas. He was a frequent caller there also; but he never roomed or boarded there, continuing to live at the family home in Charlestown. His visits were at seasonable hours, and here again the relations of the two persons, while undoubtedly irregular, seem not to have attracted public attention, nor to have been in any sense a

public scandal. In April, 1923, the couple were married, legitimizing the child which had been born to them out of wedlock; a second child has been born since the marriage. There is no evidence nor suggestion that the plaintiff had improper relations with other men than Thomas. For some time before the first child was born the plaintiff and Thomas were engaged to marry.

[1] Whether such circumstances establish open and notorious illicit cohabitation under the statute is not free from doubt. "Illicit cohabitation" is a much narrower expression than "illicit intercourse," and in certain statutes has been judicially interpreted as meaning living together. Commonwealth v. Calef, 10 Mass. 153; Winkles v. State, 4 Ga. App. 559, 61 S. E. 1128; Jackson v. State, 116 Ind. 464, 19 N. E. 330; State v. Williams, 94 Minn. 319, 320, 102 N. W. 722. It certainly is not established as open and notorious by proof of illicit relations which were stealthy and clandestine. The relations between the plaintiff and Thomas, however, were by no means of that character. The neighbors knew that he frequently came to see her; she gave them to understand that he was her husband, a statement which would characterize their relations; she informed her sisters that she was married to him; when her child was born, she told the doctors that she was Mrs. Thomas; when she moved to Blue Hill avenue she abandoned her true name (Harrington), and openly called herself by the name of the man who openly and frequently visited her, and who shortly before had attended the christening of her child.

[2] On the facts stated, supplemented by those which are clearly shown by the evidence, I am of opinion that open and notorious illicit cohabitation, within the meaning of this statute, is made out; and I so find. The facts here are much stronger against the plaintiff than those on which Judge Brewster found for the defendant on the same issue in Smith v. U. S. (D. C. Mass., April 17, 1922.)

Decree accordingly.